# EXHIBIT

# 3



Home | Latest Filings | Previous Page

## U.S. Securities and Exchange Commission

# Filing Detail

Search the Next-Generation
EDGAR System

SEC Home » Search the Next-Generation EDGAR System » Company Search » *Current Page*

| | |
|---|---|
| **Form 8-K** - Current report: | SEC Accession No. 0001162318-03-000493 |

| Filing Date | Period of Report | Items |
|---|---|---|
| 2003-11-14 | 2003-10-31 | Item 5: Other events |
| **Accepted** | | |
| 2003-11-14 16:45:34 | | |
| **Documents** | | |
| 11 | | |

### Document Format Files

| Seq | Description | Document | Type | Size |
|---|---|---|---|---|
| 1 | FORM 8-K | m91689.htm | 8-K | 21655 |
| 3 | EXHIBIT 4.1 | m91749.htm | EX-4 | 912836 |
| 4 | EXHIBIT 99.1 | m91657.htm | EX-99 | 124277 |
| 5 | EXHIBIT 99.2 | m90897.htm | EX-99 | 348734 |
| 6 | EXHIBIT 99.3 | m90694.htm | EX-99 | 596037 |
| 7 | EXHIBIT 99.4 | m90695.htm | EX-99 | 342907 |
| 8 | EXHIBIT 99.5 | m90893.htm | EX-99 | 396494 |
| 9 | EXHIBIT 99.6 | m92028.htm | EX-99 | 896671 |
| 10 | EXHIBIT 99.7 | mexhibit997.htm | EX-99 | 3940394 |
| 11 | GRAPHIC TO EXHIBIT 99.7 | mexhibit997002.jpg | GRAPHIC | 3348 |
| 12 | GRAPHIC TO EXHIBIT 99.7 | mexhibit997004.jpg | GRAPHIC | 3348 |
| | Complete submission text file | 0001162318-03-000493.txt | | 7589213 |

**STRUCTURED ASSET SEC CORP MORT PASS THR CERTS SER 2003-BC11 (Filer)** CIK: **0001269112 (see all company filings)**

Business Address
*3 WORLD FINANCIAL CENTER*
*NEW YORK NY 10285*

Mailing Address

State of Incorp.: **DE** | Fiscal Year End: **1231**
Type: **8-K** | Act: **34** | File No.: **333-106925-13** | Film No.: **031005360**
SIC: **6189** Asset-Backed Securities
Assistant Director 5

8-K 1 m91689.htm FORM 8-K

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION

Washington, D.C.  20549

## FORM 8-K

### CURRENT REPORT

### PURSUANT TO SECTION 13 OR 15(d) OF THE
### SECURITIES AND EXCHANGE ACT OF 1934

Date of Report (Date of earliest event reported)
October 31, 2003

STRUCTURED ASSET SECURITIES CORPORATION (as Depositor under the Trust Agreement dated as of October 1, 2003, providing for the issuance of Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2003-BC11)

Structured Asset Securities Corporation
(Exact Name of Registrant as Specified in its Charter)

| Delaware | 333-106925 | 74-2440850 |
|---|---|---|
| (State or Other Jurisdiction Of Incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

745 Seventh Avenue, 7th Floor
New York, New York
(Address of Principal Executive Offices)

10019
(Zip Code)

Registrant's telephone number, including area code:  (212) 526-7000

None
(Former Name or Former Address, if Changed Since Last Report)

Item 5.  Other Events

The Registrant registered issuances of its Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates Series 2003-BC11 on a delayed or continuous basis pursuant to Rule 415 under the Securities Act of 1933, as amended (the "Act"), by a Registration Statement on Form S-3 (Registration File No.

333-106925) (the "Registration Statement"). Pursuant to the Registration Statement, the Registrant issued $2,023,938,000 aggregate principal amount of Class A1, Class A2, Class A3, Class A-IO, Class M1, Class M2, Class M3, Class M4, Class M5 and Class B Certificates of its Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2003-BC11 on October 31, 2003. This Current Report on Form 8-K is being filed to satisfy an undertaking, contained in the definitive Prospectus dated August 26, 2003, as supplemented by the Prospectus Supplement dated October 29, 2003 (the "Prospectus Supplement"), to file a copy of the Trust Agreement (as defined below) and other operative agreements executed in connection with the issuance of the Certificates, a form of which was filed as an exhibit to the Registration Statement.

The Certificates were issued pursuant to a Trust Agreement (the "Trust Agreement"), attached hereto as Exhibit 4.1, dated as of October 1, 2003, among Structured Asset Securities Corporation, as depositor, Aurora Loan Services Inc., as Master Servicer, The Murrayhill Company, as Credit Risk Manager, Wells Fargo Bank Minnesota, National Association, as Securities Administrator, and LaSalle Bank National Association, as Trustee. The "Certificates" consist of the following classes: Class A1, Class A2, Class A3, Class A-IO, Class M1, Class M2, Class M3, Class M4, Class M5, Class B, Class P, Class X and Class R. The Certificates evidence all of the beneficial ownership interest in a trust fund (the "Trust Fund") that consists primarily of two pools of certain conventional, first and second lien, fixed and adjustable rate, fully amortizing and balloon, residential mortgage loans (the "Mortgage Loans") with an aggregate outstanding principal balance of approximately $1,850,991,649 as of October 1, 2003 and approximately $172,946,437 of funds held in two pre-funding accounts, together with certain other assets. Capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Trust Agreement.

Item 7.  Financial Statements; *Pro Forma* Financial Information and Exhibits

(a)     Not applicable.

(b)     Not applicable.

(c)     Exhibits:

4.1     Trust Agreement dated as of October 1, 2003, among Structured Asset Securities Corporation, as Depositor, Aurora Loan Services Inc., as Master Servicer, The Murrayhill Company, as Credit Risk Manager, Wells Fargo Bank Minnesota, National Association, as Securities Administrator, and LaSalle Bank National Association, as Trustee.

99.1    Mortgage Loan Sale and Assignment Agreement dated as of October 1, 2003, between Lehman Brothers Holdings Inc., as Seller, and Structured Asset Securities Corporation, as Purchaser.

99.2    Securitization Servicing Agreement dated as of October 1, 2003, by and among Lehman Brothers Holdings Inc., as Seller, Aurora Loan Services Inc., as Master Servicer, and Ocwen Federal Bank FSB, as Servicer and Sub-Servicing Side Letter Agreement dated as of October 1, 2003 between Lehman Brothers Holdings Inc. and Ocwen Federal Bank FSB.

99.3    Servicing Agreement dated as of October 1, 2003, among Lehman Brothers Holdings Inc., as Seller, Aurora Loan Services Inc., as Master Servicer, and Option One Mortgage Corporation, as Servicer.

99.4    Subservicing Agreement dated as of October 1, 2003, among Lehman Brothers Holdings Inc., as Seller, Aurora Loan Services Inc., as Master Servicer, and Option One Mortgage Corporation, as Servicer.

99.5

Securitization Servicing Agreement dated as of October 1, 2003, among Lehman Brothers Holdings Inc., as Seller, Aurora Loan Services Inc., as Master Servicer, and Chase Manhattan Mortgage Corporation, as Servicer.

99.6   Reconstituted Servicing Agreement dated as of October 1, 2003, among Lehman Brothers Holdings Inc., as Seller, Wells Fargo Home Mortgage, Inc., as Servicer, and Aurora Loan Services Inc., as Master Servicer and Securitization Subservicing Agreement dated as of October 1, 2003, among Lehman Brothers Holdings Inc., as Seller, Wells Fargo Home Mortgage, Inc., as Servicer and Aurora Loan Services Inc., as Master Servicer.

99.7   Mortgage Guaranty Insurance Corporation ("MGIC") Master Policy (No. 12-670-4-3487), including Terms and Conditions No. 71-7135 and Endorsements No. 71-70192 and No. 71-70201 and the MGIC Commitment Certificates covering approximately $324 million aggregate principal balance of insurable Mortgage Loans.

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the Registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

STRUCTURED ASSET SECURITIES
CORPORATION

By: ___/s/ Ellen V. Kiernan_____
   Name: Ellen V. Kiernan
   Title:   Senior Vice President

Dated: October 31, 2003

## EXHIBIT INDEX

| Exhibit No. | Description |
| --- | --- |
| 4.1 | Trust Agreement dated as of October 1, 2003, among Structured Asset Securities Corporation, as Depositor, Aurora Loan Services Inc., as Master Servicer, The Murrayhill Company, as Credit Risk Manager, Wells Fargo Bank Minnesota, National Association, as Securities Administrator, and LaSalle Bank National Association, as Trustee. |
| 99.1 | Mortgage Loan Sale and Assignment Agreement dated as of October 1, 2003, between Lehman Brothers Holdings Inc., as Seller, and Structured Asset Securities Corporation, as Purchaser. |
| 99.2 | Securitization Servicing Agreement dated as of October 1, 2003, by and among Lehman Brothers Holdings Inc., as Seller, Aurora Loan Services Inc., as Master Servicer, and Ocwen Federal Bank FSB, as Servicer and Sub-Servicing Side Letter Agreement dated as |

of October 1, 2003 between Lehman Brothers Holdings Inc. and Ocwen Federal Bank FSB.

99.3    Servicing Agreement dated as of October 1, 2003, among Lehman Brothers Holdings Inc., as Seller, Aurora Loan Services Inc., as Master Servicer, and Option One Mortgage Corporation, as Servicer.

99.4    Subservicing Agreement dated as of October 1, 2003, among Lehman Brothers Holdings Inc., as Seller, Aurora Loan Services Inc., as Master Servicer, and Option One Mortgage Corporation, as Servicer.

99.5    Securitization Servicing Agreement dated as of October 1, 2003, among Lehman Brothers Holdings Inc., as Seller, Aurora Loan Services Inc., as Master Servicer, and Chase Manhattan Mortgage Corporation, as Servicer.

99.6    Reconstituted Servicing Agreement dated as of October 1, 2003, among Lehman Brothers Holdings Inc., as Seller, Wells Fargo Home Mortgage, Inc., as Servicer, and Aurora Loan Services Inc., as Master Servicer and Securitization Subservicing Agreement dated as of October 1, 2003, among Lehman Brothers Holdings Inc., as Seller, Wells Fargo Home Mortgage, Inc., as Servicer and Aurora Loan Services Inc., as Master Servicer.

99.7    Mortgage Guaranty Insurance Corporation ("MGIC") Master Policy (No. 12-670-4-3487), including Terms and Conditions No. 71-7135 and Endorsements No. 71-70192 and No. 71-70201 and the MGIC Commitment Certificates covering approximately $324 million aggregate principal balance of insurable Mortgage Loans.

EX-4 3 m91749.htm EXHIBIT 4.1

*EXECUTION*

STRUCTURED ASSET SECURITIES CORPORATION, as Depositor,

AURORA LOAN SERVICES INC., as Master Servicer,

WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION, as
Securities Administrator,

THE MURRAYHILL COMPANY, as Credit Risk Manager,

and

LASALLE BANK NATIONAL ASSOCIATION, as Trustee

_____

TRUST AGREEMENT

Dated as of October 1, 2003

_____

STRUCTURED ASSET INVESTMENT LOAN TRUST
MORTGAGE PASS-THROUGH CERTIFICATES
SERIES 2003-BC11

Table of Contents

<u>Page</u>

ARTICLE I DEFINITIONS

| | | |
|---|---|---|
| Section 1.01 | Definitions. | 10 |
| Section 1.02 | Calculations Respecting Mortgage Loans. | 48 |
| Section 1.03 | Calculations Respecting Accrued Interest. | 48 |

## ARTICLE II DECLARATION OF TRUST; ISSUANCE OF CERTIFICATES

| | | |
|---|---|---|
| Section 2.01 | Creation and Declaration of Trust Fund; Conveyance of Mortgage Loans. | 49 |
| Section 2.02 | Acceptance of Trust Fund by Trustee: Review of Documentation for Trust Fund. | 55 |
| Section 2.03 | Representations and Warranties of the Depositor. | 56 |
| Section 2.04 | Discovery of Breach. | 58 |
| Section 2.05 | Repurchase, Purchase or Substitution of Mortgage Loans. | 59 |
| Section 2.06 | Grant Clause. | 60 |

## ARTICLE III THE CERTIFICATES

| | | |
|---|---|---|
| Section 3.01 | The Certificates. | 61 |
| Section 3.02 | Registration. | 62 |
| Section 3.03 | Transfer and Exchange of Certificates. | 62 |
| Section 3.04 | Cancellation of Certificates. | 65 |
| Section 3.05 | Replacement of Certificates. | 65 |
| Section 3.06 | Persons Deemed Owners. | 66 |
| Section 3.07 | Temporary Certificates. | 66 |
| Section 3.08 | Appointment of Paying Agent. | 66 |
| Section 3.09 | Book-Entry Certificates. | 67 |

## ARTICLE IV ADMINISTRATION OF THE TRUST FUND

| | | |
|---|---|---|
| Section 4.01 | Collection Account. | 68 |
| Section 4.02 | Application of Funds in the Collection Account. | 70 |
| Section 4.03 | Reports to Certificateholders. | 72 |
| Section 4.04 | Certificate Account. | 76 |
| Section 4.05 | The Pre-Funding Accounts. | 77 |
| Section 4.06 | The Capitalized Interest Account. | 78 |
| Section 4.07 | Securities Administration Account. | 78 |

## ARTICLE V DISTRIBUTIONS TO HOLDERS OF CERTIFICATES

| | | |
|---|---|---|
| Section 5.01 | Distributions Generally. | 80 |
| Section 5.02 | Distributions from the Certificate Account. | 80 |
| Section 5.03 | Allocation of Losses. | 90 |
| Section 5.04 | Advances by Master Servicer, Servicers and Securities Administrator. | 90 |
| Section 5.05 | Compensating Interest Payments. | 91 |
| Section 5.06 | Basis Risk Reserve Fund. | 91 |

## ARTICLE VI CONCERNING THE TRUSTEE AND THE SECURITIES ADMINISTRATOR; EVENTS OF DEFAULT

| | | |
|---|---|---|
| Section 6.01 | Duties of Trustee and Securities Administrator . | 92 |
| Section 6.02 | Certain Matters Affecting the Trustee and the Securities Administrator. | 95 |
| Section 6.03 | Trustee and Securities Administrator Not Liable for Certificates. | 96 |
| Section 6.04 | Trustee and the Securities Administrator May Own Certificates. | 97 |
| Section 6.05 | Eligibility Requirements for Trustee and Securities Administrator. | 97 |
| Section 6.06 | Resignation and Removal of Trustee and the Securities Administrator. | 97 |
| Section 6.07 | Successor Trustee and Successor Securities Administrator. | 99 |
| Section 6.08 | Merger or Consolidation of Trustee or the Securities Administrator. | 100 |
| Section 6.09 | Appointment of Co-Trustee, Separate Trustee or Custodian. | 100 |
| Section 6.10 | Authenticating Agents. | 101 |
| Section 6.11 | Indemnification of Trustee and Securities Administrator. | 102 |
| Section 6.12 | Fees and Expenses of Securities Administrator, Trustee and Custodians. | 103 |

| | | |
|---|---|---|
| Section 6.13 | Collection of Monies. | 103 |
| Section 6.14 | Events of Default; Trustee To Act; Appointment of Successor. | 103 |
| Section 6.15 | Additional Remedies of Trustee Upon Event of Default. | 108 |
| Section 6.16 | Waiver of Defaults. | 108 |
| Section 6.17 | Notification to Holders. | 109 |
| Section 6.18 | Directions by Certificateholders and Duties of Trustee During Event of Default. | 109 |
| Section 6.19 | Action Upon Certain Failures of the Master Servicer and Upon Event of Default. | 109 |
| Section 6.20 | Preparation of Tax Returns and Other Reports. | 109 |

### ARTICLE VII PURCHASE OF MORTGAGE LOANS AND TERMINATION OF THE TRUST FUND

| | | |
|---|---|---|
| Section 7.01 | Purchase of Mortgage Loans; Termination of Trust Fund Upon Purchase or Liquidation of All Mortgage Loans. | 111 |
| Section 7.02 | Procedure Upon Termination of Trust Fund. | 112 |
| Section 7.03 | Additional Trust Fund Termination Requirements. | 113 |
| Section 7.04 | Optional Repurchase Right. | 114 |

### ARTICLE VIII RIGHTS OF CERTIFICATEHOLDERS

| | | |
|---|---|---|
| Section 8.01 | Limitation on Rights of Holders. | 114 |
| Section 8.02 | Access to List of Holders. | 115 |
| Section 8.03 | Acts of Holders of Certificates. | 115 |

### ARTICLE IX ADMINISTRATION AND SERVICING OF MORTGAGE LOANS BY THE MASTER SERVICER; CREDIT RISK MANAGER

| | | |
|---|---|---|
| Section 9.01 | Duties of the Master Servicer. | 116 |
| Section 9.02 | Master Servicer Fidelity Bond and Master Servicer Errors and Omissions Insurance Policy. | 117 |
| Section 9.03 | Master Servicer's Financial Statements and Related Information. | 117 |
| Section 9.04 | Power to Act; Procedures. | 118 |
| Section 9.05 | Enforcement of Servicer's and Master Servicer's Obligations. | 120 |
| Section 9.06 | Collection of Taxes, Assessments and Similar Items. | 120 |
| Section 9.07 | Termination of Servicing Agreements; Successor Servicers. | 121 |
| Section 9.08 | Master Servicer Liable for Enforcement. | 122 |
| Section 9.09 | No Contractual Relationship Between Any Servicer and Trustee or Depositor. | 122 |
| Section 9.10 | Assumption of Servicing Agreement by Securities Administrator. | 122 |
| Section 9.11 | Due-on-Sale Clauses; Assumption Agreements. | 123 |
| Section 9.12 | Release of Mortgage Files. | 123 |
| Section 9.13 | Documents, Records and Funds in Possession of Master Servicer to be Held for Trustee. | 124 |
| Section 9.14 | Representations and Warranties of the Master Servicer. | 125 |
| Section 9.15 | Opinion. | 128 |
| Section 9.16 | Standard Hazard and Flood Insurance Policies. | 128 |
| Section 9.17 | Presentment of Claims and Collection of Proceeds. | 129 |
| Section 9.18 | Maintenance of the Primary Mortgage Insurance Policies. | 129 |
| Section 9.19 | Trustee To Retain Possession of Certain Insurance Policies and Documents. | 129 |
| Section 9.20 | [Reserved]. | 130 |
| Section 9.21 | Compensation to the Master Servicer. | 130 |
| Section 9.22 | REO Property. | 130 |
| Section 9.23 | [Reserved]. | 131 |
| Section 9.24 | Reports to the Trustee. | 131 |
| Section 9.25 | Annual Officer's Certificate as to Compliance. | 131 |
| Section 9.26 | Annual Independent Accountants' Servicing Report. | 132 |

Section 9.27   Merger or Consolidation.                                             133
Section 9.28   Resignation of Master Servicer.                                      133
Section 9.29   Assignment or Delegation of Duties by the Master Servicer.           133
Section 9.30   Limitation on Liability of the Master Servicer and Others.           134
Section 9.31   Indemnification; Third-Party Claims.                                 135
Section 9.32   Special Servicing of Delinquent Mortgage Loans.                      135
Section 9.33   Alternative Index.                                                   135
Section 9.34   Duties of the Credit Risk Manager.                                   135
Section 9.35   Limitation Upon Liability of the Credit Risk Manager.                136
Section 9.36   Removal of Credit Risk Manager.                                      136

## ARTICLE X REMIC ADMINISTRATION

Section 10.01   REMIC Administration.                                               136
Section 10.02   Prohibited Transactions and Activities.                             139
Section 10.03   Indemnification with Respect to Certain Taxes and Loss of REMIC
                Status.                                                             139
Section 10.04   REO Property.                                                       139

## ARTICLE XI MISCELLANEOUS PROVISIONS

Section 11.01   Binding Nature of Agreement; Assignment.                            140
Section 11.02   Entire Agreement.                                                   140
Section 11.03   Amendment.                                                          140
Section 11.04   Voting Rights.                                                      142
Section 11.05   Provision of Information.                                           142
Section 11.06   Governing Law.                                                      142
Section 11.07   Notices.                                                            143
Section 11.08   Severability of Provisions.                                         143
Section 11.09   Indulgences; No Waivers.                                            143
Section 11.10   Headings Not To Affect Interpretation.                             143
Section 11.11   Benefits of Agreement.                                              144
Section 11.12   Special Notices to the Rating Agencies and any NIMS Insurer.        144
Section 11.13   Conflicts.                                                          145
Section 11.14   Counterparts.                                                       145
Section 11.15   Transfer of Servicing.                                             145

## ATTACHMENTS

Exhibit A          Forms of Certificates
Exhibit B-1        Form of Initial Certification
Exhibit B-2        Form of Interim Certification
Exhibit B-3        Form of Final Certification
Exhibit B-4        Form of Endorsement
Exhibit C          Request for Release of Documents and Receipt
Exhibit D-l        Form of Residual Certificate Transfer Affidavit (Transferee)
Exhibit D-2        Form of Residual Certificate Transfer Affidavit (Transferor)
Exhibit E          List of Servicing Agreements
Exhibit F          Form of Rule 144A Transfer Certificate
Exhibit G          Form of Purchaser's Letter for Institutional Accredited Investors
Exhibit H          Form of ERISA Transfer Affidavit
Exhibit I          Monthly Remittance Advice
Exhibit J          Monthly Electronic Data Transmission
Exhibit K          List of Custodial Agreements
Exhibit L          [Reserved]
Exhibit M          List of Credit Risk Management Agreements

| Exhibit N-1 | [Reserved] |
| Exhibit N-2 | [Reserved] |
| Exhibit O | Form of Addition Notice (for purchase of Subsequent Mortgage Loans) |
| Exhibit P | Interest Rate Cap Agreement |
| Exhibit Q | Form of Certification to be Provided by Securities Administrator to the Depositor |
| | |
| Schedule A | Mortgage Loan Schedule (by Mortgage Pool) |

This TRUST AGREEMENT, dated as of October 1, 2003 (the "Agreement"), is by and among STRUCTURED ASSET SECURITIES CORPORATION, a Delaware corporation, as depositor (the "Depositor"), LASALLE BANK NATIONAL ASSOCIATION, as Trustee (the "Trustee"), AURORA LOAN SERVICES INC., as master servicer (the "Master Servicer"), WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION, as securities administrator (the "Securities Administrator"), and THE MURRAYHILL COMPANY, a Colorado corporation, as credit risk manager (the "Credit Risk Manager").

PRELIMINARY STATEMENT

The Depositor has acquired the Initial Mortgage Loans from the Seller, and at the Closing Date is the owner of the Initial Mortgage Loans and the other property being conveyed by it to the Trustee hereunder for inclusion in the Trust Fund. On the Closing Date, the Depositor will acquire the Certificates from the Trust Fund, as consideration for its transfer to the Trust Fund of the Initial Mortgage Loans, the Pre-Funding Amount and the other property constituting the Trust Fund. The Depositor has duly authorized the execution and delivery of this Agreement to provide for the conveyance to the Trustee of the Initial Mortgage Loans, any Subsequent Mortgage Loans and the other property constituting the Trust Fund. All covenants and agreements made by the Seller in the Mortgage Loan Sale Agreement and by the Depositor, the Master Servicer, the Securities Administrator and the Trustee herein with respect to the Mortgage Loans and the other property constituting the Trust Fund are for the benefit of the Holders from time to time of the Certificates and, to the extent provided herein, any NIMS Insurer. The Depositor, the Trustee, the Master Servicer, the Securities Administrator and the Credit Risk Manager are entering into this Agreement, and the Trustee is accepting the Trust Fund created hereby, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.

As provided herein, the Trustee shall elect that the Trust Fund (exclusive of (i) the Basis Risk Reserve Fund, (ii) the Basis Risk Cap (iii) the Pre-funding Account (iv) the Capitalized Interest Account and (v) the Class X Cap) be treated for federal income tax purposes as comprising four real estate mortgage investment conduits (each a "REMIC" or, in the alternative, REMIC 1, REMIC 2, REMIC 3 and REMIC 4; REMIC 4 also being referred to as the "Upper Tier REMIC"). Each Certificate, other than the Class X Certificate, and Class R Certificate represents ownership of a regular interest in the Upper Tier REMIC for purposes of the REMIC Provisions. The Class X Certificate represents ownership of two regular interests in the Upper Tier REMIC as described in note 10 of the table below for such REMIC. In addition, each Certificate, other than the Class R, Class A-IO, Class X and Class P Certificates, represents the right to receive payments with respect to any Basis Risk Shortfalls and Unpaid Basis Risk Shortfalls from the Basis Risk Reserve Fund pursuant to Section 5.06. The Class R Certificate represents ownership of the sole Class of residual interest in each of REMIC 1, REMIC 2, REMIC 3 and the Upper Tier REMIC for purposes of the REMIC Provisions.

The Upper Tier REMIC shall hold as its assets the several Classes of uncertificated Lower Tier Interests in REMIC 3, and each such Lower Tier Interest is hereby designated as a regular interest in REMIC 3 for purposes of the REMIC Provisions. REMIC 3 shall hold as its assets the several Classes of uncertificated Lower

Funds Cap and the Pool 2 Net Funds Cap, weighted on the basis of the Pool Balance for each Mortgage Pool), minus (ii) the Credit Risk Manager's Fee Rate, over (b) the Adjusted Lower Tier WAC.  For any Distribution Date, interest that accrues on the notional component of the Class X Certificate shall be deferred to the extent of any increase in the Overcollateralization Amount on such date.  Such deferred interest shall not itself bear interest.

(11)  The Class R Certificate will be issued without a Class Principal Amount and will not bear interest at a stated rate.  The Class R Certificate represents ownership of the residual interest in the Upper Tier REMIC, as well as ownership of the Class LT2-R and Class LT1-R Interests.

(12)  The Class R Certificates will be issued as a single Certificate evidencing the entire Percentage Interest in such Class.

(13)  The Class A-IO Certificates are an interest-only Class and for any Distribution Date shall bear interest at the per annum rate shown above on its Class Notional Amount (as defined herein).

(14)  The Class P Certificates shall not bear interest at a stated rate.  Prepayment Premiums paid with respect to the Mortgage Loans shall be paid to the Holders of the Class P Certificates as provided in Section 5.02(f).

(15)  The Class P Certificates will have an initial Class P Principal Amount of $50.

As of the Cut-off Date, the Initial Mortgage Loans had an aggregate Scheduled Principal Balance of $1,850,991,649.95.

In consideration of the mutual agreements herein contained, the Depositor, the Seller, the Credit Risk Manager, the Master Servicer, the Securities Administrator and the Trustee hereby agree as follows:

ARTICLE I

DEFINITIONS

Section 1.01   Definitions.  The following words and phrases, unless the context otherwise requires, shall have the following meanings:

Accepted Servicing Practices:  As provided in each Servicing Agreement.

Accountant:  A person engaged in the practice of accounting who (except when this Agreement provides that an Accountant must be Independent) may be employed by or affiliated with the Depositor or an Affiliate of the Depositor.

Accrual Period:  With respect to each Class and Component of the Certificates (other than the Class P, Class X and Class R Certificates) and any Distribution Date, the period beginning on the Distribution Date in the calendar month immediately preceding the month in which the related Distribution Date occurs (or, in the case of the first Distribution Date, beginning on October 25, 2003) and ending on the day immediately preceding the related Distribution Date, as calculated in accordance with Section 1.03.

Act:  As defined in Section 3.03(c).

Addition Notice:  With respect to each sale of Subsequent Mortgage Loans to the Trust Fund pursuant to Section 2.01(b) of this Agreement, a notice from the Depositor substantially in the form of Exhibit O hereto delivered to the Trustee, the Master Servicer, the Securities Administrator, the Custodians, each Rating Agency and any NIMS Insurer.

Additional Collateral:  None.

Adjustable Rate Mortgage Loan:  Any Mortgage Loan as to which the related Mortgage Note provides for the adjustment of the Mortgage Rate applicable thereto.

Advance:  With respect to a Mortgage Loan other than a Simple Interest Mortgage Loan, an advance of the aggregate of payments of principal and interest (net of the applicable Servicing Fee) on one or more

reference to the weighted average of the excess of the maximum "lifetime" Mortgage Rates specified in the related Mortgage Notes for the Pool 1 Mortgage Loans over the Aggregate Expense Rate and (y) the Pool 2 Optimal Interest Remittance Amount were computed by reference to the weighted average of the excess of the maximum "lifetime" Mortgage Rates specified in the related Mortgage Notes for the Pool 2 Mortgage Loans over the Aggregate Expense Rate; and (iv) in the case of the Class A3 Certificates for any Distribution Date, an annual rate that would equal the weighted average Maximum Interest Rate of the A3(1) and A3(2) Components for such date, weighted on the basis of the related Component Principal Amounts.

MERS:  Mortgage Electronic Registration Systems, Inc., a Delaware corporation, or any successor in interest thereto.

MERS Mortgage Loan:  Any Mortgage Loan as to which the related Mortgage, or an Assignment of Mortgage, has been or will be recorded in the name of MERS, as nominee for the holder from time to time of the Mortgage Note.

MGIC:  Mortgage Guaranty Insurance Corporation, or any successor in interest.

Monthly Excess Cashflow:  With respect to any Distribution Date, the sum of (1) the Pool 1 Monthly Excess Interest and the Pool 2 Monthly Excess Interest for such date and (2) the Aggregate Overcollateralization Release Amount for such date.

Mortgage:  A mortgage, deed of trust or other instrument encumbering a fee simple interest in real property securing a Mortgage Note, together with improvements thereto.

Mortgage File:  The mortgage documents listed in Section 2.01(c) pertaining to a particular Mortgage Loan required to be delivered to the Trustee pursuant to this Agreement.

Mortgage Loan:  A Mortgage and the related notes or other evidences of indebtedness secured by each such Mortgage conveyed, transferred, sold, assigned to or deposited with the Trustee pursuant to Section 2.01 or Section 2.05, including without limitation each Initial Mortgage Loan and Subsequent Mortgage Loan listed on the Mortgage Loan Schedule, as amended from time to time.

Mortgage Loan Sale Agreement:  The mortgage loan sale and assignment agreement dated as of October 1, 2003, for the sale of the Mortgage Loans by the Seller to the Depositor.

Mortgage Loan Schedule:  The schedule attached hereto as Schedule A, which shall identify each Mortgage Loan, as such schedule may be amended from time to time to reflect the addition of Mortgage Loans (including the addition of any Subsequent Mortgage Loans) to, or the deletion of Mortgage Loans from, the Trust Fund.  Such schedule shall set forth, among other things, the following information with respect to each Mortgage Loan: (i) the Mortgage Loan identifying number; (ii) the Mortgagor's name; (iii) the street address of the Mortgaged Property including the city, state and zip code; (iv) the original principal amount of the Mortgage Loan; (v) the Mortgage Rate at origination; (vi) the monthly payment of principal and interest at origination; (vii) the Mortgage Pool in which such Mortgage Loan is included, (viii) the applicable Servicer servicing such Mortgage Loan and the applicable Servicing Fee Rate; (ix) the Custodian with respect to the Mortgage File related to such Mortgage Loan; (x) where applicable, whether such Mortgage Loan is covered by the Bulk PMI Policy or LPMI Policy and the applicable PMI Insurer and the Insurance Fee Rate; and (xi) whether such Mortgage Loan is subject to Prepayment Premium for voluntary prepayments by the Mortgagor, the term during which such Prepayment Premiums are imposed and the method of calculations of the Prepayment Premium.  The Depositor shall be responsible for providing the Trustee and the Master Servicer with all amendments to the Mortgage Loan Schedule.

Mortgage Note:  The note or other evidence of the indebtedness of a Mortgagor secured by a Mortgage under a Mortgage Loan.

Mortgage Pool:  Either Pool 1 or Pool 2.

Mortgage Rate:  With respect to any Mortgage Loan, the per annum rate at which interest accrues on such Mortgage Loan, as determined under the related Mortgage Note as reduced by any Relief Act Reductions.

Mortgaged Property:  Either of (x) the fee simple interest in real property, together with improvements thereto including any exterior improvements to be completed within 120 days of disbursement of the related Mortgage Loan proceeds, or (y) in the case of a Cooperative Loan, the related Cooperative Shares and Proprietary Lease, securing the indebtedness of the Mortgagor under the related Mortgage Loan.

Mortgagor:  The obligor on a Mortgage Note.

Net Excess Spread:  With respect to any Distribution Date, (A) the fraction, expressed as a percentage, the numerator of which is equal to the product of (i) the amount, if any, by which (a) the aggregate of the Interest Remittance Amount for each Mortgage Pool for such Distribution Date (as reduced by the Credit Risk Manager's Fee) exceeds (b) the Current Interest payable with respect to the Certificates for such date and (ii) twelve, and the denominator of which is the Aggregate Pool Balance for such Distribution Date, multiplied by (B) a fraction, the numerator of which is thirty and the denominator of which is the greater of thirty and the actual number of days in the immediately preceding calendar month.

Net Funds Cap:  The Pool 1 Net Funds Cap, the Pool 2 Net Funds Cap or the Subordinate Net Funds Cap, as the context requires.

Net Liquidation Proceeds:  With respect to any Liquidated Mortgage Loan, the related Liquidation Proceeds net of (i) unreimbursed expenses and (ii) any unreimbursed Advances, if any, received and retained in connection with the liquidation of such Mortgage Loan.

Net Mortgage Rate:  With respect to any Mortgage Loan, the Mortgage Rate thereof reduced by the Aggregate Expense Rate for such Mortgage Loan.

Net Prepayment Interest Shortfall:  With respect to any Master Servicer Remittance Date, the excess, if any, of any Prepayment Interest Shortfalls with respect to the Mortgage Loans for such date over any amounts paid with respect to such shortfalls by the Servicers pursuant to the Servicing Agreements.

Net Simple Interest Excess:  With respect to any Distribution Date, the excess, if any, of (a) the amount of the payments received by the Servicers and the Master Servicer in the related Collection Period allocable to interest in respect of Simple Interest Mortgage Loans, calculated in accordance with the Simple Interest Method, net of the related Servicing Fees, over (b) 30 days' interest at the weighted average (by principal balance) of the Net Mortgage Rates of the Simple Interest Mortgage Loans as of the first day of the related Collection Period, as determined by the related Servicer, on the aggregate principal balance of such Simple Interest Mortgage Loans for such Distribution Date, carried to six decimal places, rounded down, and calculated on the basis of a 360-day year consisting of twelve 30-day months.  For this purpose, the amount of interest received in respect of the Simple Interest Mortgage Loans in any month shall be deemed (a) to include any Advances of interest made by the related Servicer, the Master Servicer or the Securities Administrator in such month in respect of such Simple Interest Mortgage Loans and (b) to be reduced by any amounts paid to the related Servicer, the Master Servicer or the Securities Administrator in such month in reimbursement of Advances previously made by such Servicer, the Master Servicer or the Securities Administrator in respect of such Simple Interest Mortgage Loans.

Net Simple Interest Shortfall:  With respect to any Distribution Date, the excess, if any, of (a) 30 days' interest at the weighted average (by principal balance) of the Net Mortgage Rates of the Simple Interest Mortgage Loans as of the first day of the related Collection Period, as determined by the related Servicer, on the aggregate principal balance of such Simple Interest Mortgage Loans for such Distribution Date, carried to six decimal places, rounded down, and calculated on the basis of a 360-day year consisting of twelve 30-day months, over (b) the amount of the payments received by the related Servicer or the Master Servicer in the related Collection Period allocable to interest in respect of such Simple Interest Mortgage Loans, calculated in accordance with the Simple Interest Method, net of the related Servicing Fees.

Targeted Overcollateralization Amount:  With respect to any Distribution Date (x) prior to the Stepdown Date, $15,179,535.65 or 0.75% of the sum of the Cut-off Date Balance and the Pre-Funding Amount, (y) on or after the Stepdown Date and provided a Trigger Event is not in effect, the greater of (1) $10,119,690.43 or 0.50% of the sum of the Cut-off Date Balance and the Pre-Funding Amount and (2) the lesser of (i) 0.75% of the sum of the Cut-off Date Balance and the Pre-Funding Amount and (ii) 1.50% of the Aggregate Pool Balance after giving effect to distributions on such Distribution Date and (z) on or after the Stepdown Date and provided a Trigger Event is in effect, the Targeted Overcollateralization Amount for the immediately preceding Distribution Date.

Tax Matters Person:  The "tax matters person" as specified in the REMIC Provisions.

Telerate Page 3750:  The display currently so designated as "Page 3750" on the Bridge Telerate Service (or such other page selected by the Master Servicer as may replace Page 3750 on that service for the purpose of displaying daily comparable rates on prices).

Termination Price:  As defined in Section 7.01.

Title Insurance Policy:  A title insurance policy maintained with respect to a Mortgage Loan.

Total Distribution Amount:  With respect to any Distribution Date, the sum of (i) the aggregate of the Interest Remittance Amounts for such date; (ii) the aggregate of the Principal Remittance Amounts for such date; and (iii) all Prepayment Premiums collected during the related Prepayment Period.

Transfer Agreements:  As defined in the Mortgage Loan Sale Agreement.

Transfer Date:  Any date during the Pre-Funding Period on which Subsequent Mortgage Loans are conveyed by the Depositor to the Trust Fund pursuant to Section 2.01(b), as specified in the applicable Transfer Supplement.

Transfer Price:  With respect to any Subsequent Mortgage Loan, the price specified in the Transfer Supplement which shall be no less than the outstanding principal balance of such Subsequent Mortgage Loan as of the Subsequent Cut-off Date specified in the Transfer Supplement.

Transfer Supplement:  With respect to each sale of Subsequent Mortgage Loans from the Seller to the Depositor pursuant to the Mortgage Loan Sale Agreement, the transfer supplement entered into between the Seller and the Depositor, substantially in the form of Exhibit B to the Mortgage Loan Sale Agreement.

Transferor:  Each seller of Mortgage Loans to the Seller pursuant to the Transfer Agreements.

Trigger Event:  With respect to any Distribution Date, if either a Delinquency Event or Cumulative Loss Trigger Event is in effect for such Distribution Date.

Trust Fund:  The corpus of the trust created pursuant to this Agreement, consisting of the Mortgage Loans, the assignment of the Depositor's rights under the Transfer Agreements, the Mortgage Loan Sale Agreement and each Servicing Agreement, the Basis Risk Cap and all amounts received from the Cap Provider thereunder, such amounts as shall from time to time be held in the Collection Account, the Certificate Account, the Pre-Funding Accounts, the Capitalized Interest Account, any Custodial Account and any Escrow Account, the Basis Risk Reserve Fund, the Insurance Policies, any REO Property and the other items referred to in, and conveyed to the Trustee under, Section 2.01(a).  The Class X Cap shall not be an asset of the Trust Fund, and the Trustee shall hold the Class X Cap separate and apart from the assets of the Trust Fund, solely for the benefit of the Class X Certificateholder.

Trustee:  LaSalle Bank National Association, not in its individual capacity but solely as Trustee, or any successor in interest, or if any successor trustee shall be appointed as herein provided, then such successor in interest or successor trustee, as the case may be.

Trustee Fee:  A fixed annual fee of $3,750, which is paid by the Securities Administrator from its Securities Administrator Fee.

UCC:  The Uniform Commercial Code as in effect in any applicable jurisdiction from time to time.

Underwriter:  Lehman Brothers Inc.

Underwriter's Exemption:  Prohibited Transaction Exemption 2002-41, 67 Fed. Reg. 54487 (2002), as amended (or any successor thereto), or any substantially similar administrative exemption granted by the U.S. Department of Labor.

Uniform Commercial Code:  The Uniform Commercial Code as in effect in any applicable jurisdiction from time to time.

Unpaid Basis Risk Shortfall:  With respect to any Distribution Date and any LIBOR Certificate or Class A3 Certificate, the aggregate of all Basis Risk Shortfalls with respect to such Class remaining unpaid from previous Distribution Dates, plus interest accrued thereon at the applicable Certificate Interest Rate (calculated without giving effect to the applicable Net Funds Cap) but limited to a rate no greater than the Maximum Interest Rate.

Upper Tier REMIC:  REMIC 4.

Voting Interests:  The portion of the voting rights of all the Certificates that is allocated to any Certificate for purposes of the voting provisions of this Agreement.  At all times during the term of this Agreement, 97% of all Voting Interests shall be allocated to the Senior Certificates, the Class M, Class B and Class R Certificates.  Voting Interests shall be allocated among such Certificates (other than the Class R Certificates) based on the product of (i) 97% and (ii) the fraction, expressed as a percentage, the numerator of which is the aggregate Class Principal Amount of all Certificates then outstanding and the denominator is the Aggregate Pool Balance then outstanding.  The remainder of the Voting Interests not otherwise allocated below shall be allocated to the Class R Certificates.  At all times during the term of this Agreement, 1% of all Voting Interests shall be allocated to each Class of the Class A-IO, Class P and Class X Certificates, while they remain outstanding and, prior to the end of the Pre-Funding Period, any Pre-Funding Amount.  Voting Interests shall be allocated among the other Classes of Certificates (and among the Certificates within each such Class) in proportion to their Class Principal Amounts (or Certificate Principal Amounts) or Percentage Interests.

Section 1.02    Calculations Respecting Mortgage Loans.

Calculations required to be made pursuant to this Agreement with respect to any Mortgage Loan in the Trust Fund shall be made based upon current information as to the terms of the Mortgage Loans and reports of payments received from the Mortgagor on such Mortgage Loans and payments to be made to the Securities Administrator as supplied to the Securities Administrator by the Master Servicer.  The Securities Administrator shall not be required to recompute, verify or recalculate the information supplied to it by the Master Servicer, any Servicer or the Credit Risk Manager.

Section 1.03    Calculations Respecting Accrued Interest.

Accrued interest, if any, on any LIBOR Certificate shall be calculated based upon a 360 day year and the actual number of days in each Accrual Period.  Accrued interest, if any, on any Class A3 and Class A-IO Certificates shall be calculated based upon a 360-day year consisting of twelve 30-day months.

ARTICLE II

DECLARATION OF TRUST;
ISSUANCE OF CERTIFICATES

Section 2.01    Creation and Declaration of Trust Fund; Conveyance of Mortgage Loans.

(a)    <u>Initial Mortgage Loans</u>.  Concurrently with the execution and delivery of this Agreement, the Depositor does hereby transfer, assign, set over, deposit with and otherwise convey to the Trustee, without recourse, subject to Sections 2.02, 2.04, 2.05 and 2.06, in trust, all the right, title and interest of the Depositor in and to the Initial Mortgage Loans.  Such conveyance includes, without limitation, the right to all payments of principal and interest received on or with respect to the Initial Mortgage Loans on and after the Cut off Date (other than payments of principal and interest due on or before such date), and all such payments due after such date but received prior to such date and intended by the related Mortgagors to be applied after such date together with all of the Depositor's right, title and interest in and to the Collection Account and all amounts from time to time credited to and the proceeds of the Collection Account, the Certificate Account and all amounts from time to time credited to and the proceeds of the Certificate Account, the Pre-Funding Accounts and all amounts from time to time credited to and the proceeds of the Pre-Funding Accounts, the Capitalized Interest Account and all amounts from time to time credited to and the proceeds of the Capitalized Interest Account, any Custodial Accounts and all amounts from time to time credited to and the proceeds of any Custodial Accounts, any Escrow Account established pursuant to Section 9.06 and all amounts from time to time credited to and the proceeds of any Escrow Account established pursuant to Section 9.06 and the Basis Risk Reserve Fund established pursuant to Section 5.06 and all amounts from time to time credited to and the proceeds of the Basis Risk Reserve Fund established pursuant to Section 5.06, any REO Property and the proceeds thereof, the Depositor's rights under any Insurance Policies related to the Mortgage Loans, the Depositor's security interest in any collateral pledged to secure the Mortgage Loans, including the Mortgaged Properties and any Additional Collateral, and any proceeds of the foregoing, to have and to hold, in trust; and the Trustee declares that, subject to the review provided for in Section 2.02, it has received and shall hold the Trust Fund, as trustee, in trust, for the benefit and use of the Holders of the Certificates and for the purposes and subject to the terms and conditions set forth in this Agreement, and, concurrently with such receipt, has caused to be executed, authenticated and delivered to or upon the order of the Depositor, in exchange for the Trust Fund, Certificates in the authorized denominations evidencing the entire ownership of the Trust Fund.

Concurrently with the execution and delivery of this Agreement, the Depositor does hereby assign to the Trustee all of its rights and interest under the Mortgage Loan Sale Agreement, including all rights of the Seller under each Servicing Agreement and each Transfer Agreement, but only to the extent assigned under the Mortgage Loan Sale Agreement.  The Trustee hereby accepts such assignment, and shall be entitled to exercise all the rights of the Depositor under the Mortgage Loan Sale Agreement as if, for such purpose, it were the Depositor.  The foregoing sale, transfer, assignment, set-over, deposit and conveyance does not and is not intended to result in the creation or assumption by the Trustee of any obligation of the Depositor, the Seller or any other Person in connection with the Initial Mortgage Loans or any other agreement or instrument relating thereto except as specifically set forth therein.  The Depositor hereby directs the Trustee, solely in its capacity as Trustee hereunder, to execute and deliver, concurrently with the execution and delivery of this Agreement, the Cap Agreement.  The Trustee shall have no duty or responsibility to enter into any other interest rate cap agreement upon the expiration or termination of the Cap Agreement.  The Class X Cap shall not be an asset of the Trust Fund, and the Trustee shall hold the Class X Cap separate and apart from the assets of the Trust Fund, solely for the benefit of the Class X Certificateholder.

(b)    <u>Subsequent Mortgage Loans</u>.  On each Transfer Date occurring during the Pre-Funding Period, provided that each condition set forth in this Section 2.01(b) is satisfied, the Depositor shall convey to the Trust Fund, and the Trustee shall purchase pursuant to this Section 2.01(b), all Subsequent Mortgage Loans which satisfy the criteria set forth in this Section 2.01(b) then offered for sale by the Depositor; *provided, however*, that the related aggregate Transfer Price shall not exceed the Pre-Funding Amount.

Subject to the conditions set forth in this Section 2.01(b), in consideration of the Trustee's delivery on the related Transfer Date to the Depositor or its designee, or upon the order of the Depositor, of the Transfer Price for the related Subsequent Mortgage Loans from amounts on deposit in the related Pre-Funding Account, the Depositor shall, on each Transfer Date, sell, transfer, assign, set over and otherwise convey to the Trustee on behalf of the Trust Fund, without recourse, but subject to the other terms and provisions of this Agreement, all of the right, title and interest of the Depositor in and to each Subsequent Mortgage Loan (including all interest and principal thereon received after the related Subsequent Cut-off Date specified in the Transfer Supplement)

identified in the Addition Notice delivered by the Depositor on such Transfer Date and all items in the related Mortgage File. In connection therewith, the Depositor shall amend the Mortgage Loan Schedule to reflect the inclusion of such Subsequent Mortgage Loan in the applicable Mortgage Pool as part of the assets of the Trust Fund. The Depositor shall promptly deliver to the Trustee and the Master Servicer a copy of the Mortgage Loan Schedule as so amended.

The Depositor shall on any Transfer Date transfer to the Trust Fund the applicable Subsequent Mortgage Loans and the other property and rights related thereto described in the immediately preceding paragraph, as applicable, and the Trust Fund shall purchase such Subsequent Mortgage Loans, property and rights only upon the satisfaction of each of the following conditions on or prior to the related Transfer Date:

(i)     immediately prior to such Transfer Date, the Pre-Funding Amount in the related Pre-Funding Account shall equal or exceed the aggregate Transfer Price of the related Subsequent Mortgage Loans;

(ii)     the Depositor shall have delivered to the Trustee, with a copy to the Master Servicer and the Securities Administrator, a copy of a duly executed Transfer Supplement with respect to the Subsequent Mortgage Loans entered into between the Depositor and the Seller, in the form of Exhibit B to the Mortgage Loan Sale Agreement;

(iii)     at least ten (10) Business Days prior to the related Transfer Date, the Depositor shall have delivered to the Trustee, the Master Servicer, the Securities Administrator, each Rating Agency, the applicable Custodian and the NIMS Insurer an Addition Notice in the form of Exhibit O hereto identifying the Subsequent Mortgage Loans offered for sale to the Trust Fund;

(iv)     the remaining term to maturity of each Subsequent Mortgage Loan may not exceed 360 months;

(v)     each Subsequent Mortgage Loan will be not more than 30 days Delinquent in payment as of the applicable Subsequent Cut-off Date;

(vi)     after giving effect to the proposed transfer of Subsequent Mortgage Loans, the Overcollateralization Amount on such Transfer Date equals or exceeds the Targeted Overcollateralization Amount for such date;

(vii)     no Subsequent Mortgage Loan shall have been selected in a manner adverse to Certificateholders;

(viii)     the Subsequent Mortgage Loans to be transferred on such Transfer Date shall satisfy the same representations and warranties applicable to the Initial Mortgage Loans in the related Mortgage Pool set forth in the Mortgage Loan Sale Agreement;

(ix)     the Depositor shall have delivered to the Trustee and the NIMS Issuer a letter from each Rating Agency stating that the addition of the Subsequent Mortgage Loans will not result in the reduction, qualification or withdrawal of the then current ratings of the Certificates;

(x)     no Subsequent Mortgage Loan shall have an original Loan-to-Value Ratio greater than 100.00% and the weighted average Combined Loan-to-Value Ratio of the applicable Mortgage Pool (after taking into account the inclusion of such Subsequent Mortgage Loans) shall not exceed 85.00%;

(xi)     each Subsequent Mortgage Loan shall be underwritten substantially in accordance with the applicable originator's underwriting guidelines;

(xii)     the Depositor shall have delivered to the Trustee, the Master Servicer, the Securities Administrator, each Rating Agency and the NIMS Insurer such additional information reasonably

requested by any of them with respect to the Subsequent Mortgage Loans to be sold to the Trust Fund on the Transfer Date;

(xiii)   the Depositor shall have delivered to the Trustee and each Rating Agency a letter from an independent accountant stating that the characteristics of the Subsequent Mortgage Loans conform to the characteristics of the Initial Mortgage Loans required in this Section 2.01(b);

(xiv)   as of each Transfer Date, neither the Depositor nor the Seller shall be insolvent, nor will either of them be made insolvent by such transfer;

(xv)   the Pre-Funding Period shall not have ended;

(xvi)   after giving effect to the acquisition of all of the Subsequent Mortgage Loans at the end of the Pre-Funding Period, the Mortgage Loans shall have a weighted average Mortgage Rate of not more than 100 basis points lower than the weighted average Mortgage Rate of the Initial Mortgage Loans;

(xvii)   the applicable Servicer shall have deposited in the Collection Account within two Business Days following the Transfer Date all collections in respect of the Subsequent Mortgage Loans received after the related Subsequent Cut-off Date; and

(xviii)  the Depositor shall have delivered to the Master Servicer, the Trustee and the NIMS Insurer an Officer's Certificate confirming the satisfaction of each condition precedent specified in this paragraph and opinions of counsel with respect to corporate, bankruptcy, ERISA and tax matters relating to the transfer of Subsequent Mortgage Loans in the forms substantially similar to those delivered on the Closing Date.

(c)      In connection with such transfer and assignment of the Initial Mortgage Loans, the Depositor does (and upon the transfer and assignment of any Subsequent Mortgage Loans, shall) hereby deliver to, and deposit with, or cause to be delivered to and deposited with, the Trustee, and/or the applicable Custodian acting on the Trustee's behalf, the following documents or instruments with respect to each Mortgage Loan (each a "Mortgage File") so transferred and assigned:

(i)      with respect to each Mortgage Loan, the original Mortgage Note endorsed without recourse in proper form to the order of the Trustee, or in blank (in each case, with all necessary intervening endorsements, as applicable) or with respect to any lost Mortgage Note, a lost note affidavit stating that the original Mortgage Note was lost, misplaced or destroyed, together with a copy of the related Mortgage Note;

(ii)     the original of any guarantee executed in connection with the Mortgage Note, assigned to the Trustee;

(iii)    with respect to any Mortgage Loan other than a Cooperative Loan, the original recorded Mortgage with evidence of recording indicated thereon and the original recorded power of attorney, with evidence of recording thereon.  If, in connection with any Mortgage Loan, the Depositor cannot deliver the Mortgage or power of attorney with evidence of recording thereon on or prior to the Closing Date (or, in the case of a Subsequent Mortgage Loan, on or prior to the applicable Transfer Date) because of a delay caused by the public recording office where such Mortgage has been delivered for recordation or because such Mortgage or power of attorney has been lost, the Depositor shall deliver or cause to be delivered to the Trustee (or its custodian), in the case of a delay due to recording, a true copy of such Mortgage or power of attorney, pending delivery of the original thereof, together with an Officer's Certificate of the Depositor certifying that the copy of such Mortgage or power of attorney delivered to the Trustee (or the applicable Custodian) is a true copy and that the original of such Mortgage or power of attorney has been forwarded to the public recording office, or, in the case of a Mortgage or power of attorney that has been lost, a copy thereof (certified as provided for under the laws of the appropriate jurisdiction) and a written Opinion of Counsel acceptable to the Trustee and the Depositor that an

original recorded Mortgage or power of attorney is not required to enforce the Trustee's interest in the Mortgage Loan;

(iv) the original of each assumption, modification or substitution agreement, if any, relating to the Mortgage Loans, or, as to any assumption, modification or substitution agreement which cannot be delivered on or prior to the Closing Date (or, in the case of a Subsequent Mortgage Loan, on or prior to the applicable Transfer Date) because of a delay caused by the public recording office where such assumption, modification or substitution agreement has been delivered for recordation, a photocopy of such assumption, modification or substitution agreement, pending delivery of the original thereof, together with an Officer's Certificate of the Depositor certifying that the copy of such assumption, modification or substitution agreement delivered to the Trustee (or the applicable Custodian) is a true copy and that the original of such agreement has been forwarded to the public recording office;

(v) with respect to each Non-MERS Mortgage Loan other than a Cooperative Loan, an original Assignment of Mortgage, in form and substance acceptable for recording. The Mortgage shall be assigned either (A) in blank, without recourse or (B) to "LaSalle Bank National Association, as Trustee of Structured Asset Investment Loan Trust, 2003-BC11," without recourse;

(vi) if applicable, such original intervening assignments of the Mortgage, notice of transfer or equivalent instrument (each, an "Intervening Assignment"), as may be necessary to show a complete chain of assignment from the originator, or, in the case of an Intervening Assignment that has been lost, a written Opinion of Counsel acceptable to the Trustee and any NIMS Insurer that such original Intervening Assignment is not required to enforce the Trustee's interest in the Mortgage Loans;

(vii) with respect to any Mortgage Loan other than a Cooperative Loan, the original mortgagee title insurance policy or attorney's opinion of title and abstract of title;

(viii) the original of any security agreement, chattel mortgage or equivalent instrument executed in connection with the Mortgage or as to any security agreement, chattel mortgage or their equivalent instrument that cannot be delivered on or prior to the Closing Date because of a delay caused by the public recording office where such document has been delivered for recordation, a photocopy of such document, pending delivery of the original thereof, together with an Officer's Certificate of the Depositor certifying that the copy of such security agreement, chattel mortgage or their equivalent instrument delivered to the Trustee (or its custodian) is a true copy and that the original of such document has been forwarded to the public recording office;

(ix) with respect to any Cooperative Loan, the Cooperative Loan Documents; and

(x) with respect to any manufactured housing contract, any related manufactured housing sales contract, installment loan agreement or participation interest.

The parties hereto acknowledge and agree that the form of endorsement attached hereto as Exhibit B-4 is intended to effect the transfer to the Trustee, for the benefit of the Certificateholders, of the Mortgage Notes and the Mortgages.

(d) (i) Assignments of Mortgage with respect to each Non-MERS Mortgage Loan other than a Cooperative Loan shall be recorded; *provided, however,* that such Assignments need not be recorded if, on or prior to the Closing Date (or, in the case of a Subsequent Mortgage Loan, on or prior to the applicable Transfer Date), the Depositor delivers, at its own expense, an Opinion of Counsel addressed to the Trustee (which must be Independent counsel) acceptable to the Trustee and the Rating Agencies, to the effect that recording in such states is not required to protect the Trustee's interest in the related Non-MERS Mortgage Loans; *provided, further,* that notwithstanding the delivery of any Opinion of Counsel, the Master Servicer shall cause the applicable Servicer to submit each Assignment of Mortgage for recording upon the occurrence of a bankruptcy, insolvency or foreclosure relating to the Mortgagor under the related Mortgage. Subject to the preceding sentence, as soon as practicable after the Closing Date (but in no event more than three months thereafter except

to the extent delays are caused by the applicable recording office), the Master Servicer, at the expense of the Depositor and with the cooperation of the applicable Servicer, shall cause to be properly recorded by each Servicer in each public recording office where the related Mortgages are recorded each Assignment of Mortgage referred to in subsection (b)(v) above with respect to each Non-MERS Mortgage Loan.

(ii)     With respect to each MERS Mortgage Loan, the Master Servicer shall cause the applicable Servicer, at the expense of the Depositor, to take such actions as are necessary to cause the Trustee to be clearly identified as the owner of each such Mortgage Loan on the records of MERS for purposes of the system of recording transfers of beneficial ownership of mortgages maintained by MERS.  With respect to each Cooperative Loan, the Master Servicer, at the expense of the Depositor and with the cooperation of the applicable Servicer, shall cause such Servicer to take such actions as are necessary under applicable law in order to perfect the interest of the Trustee in the related Mortgaged Property.

(e)     In instances where a Title Insurance Policy is required to be delivered to the Trustee or the applicable Custodian on behalf of the Trustee under clause (b)(vii) above and is not so delivered, the Depositor will provide a copy of such Title Insurance Policy to the Trustee, or to the applicable Custodian on behalf of the Trustee, as promptly as practicable after the execution and delivery hereof, but in any case within 180 days of the Closing Date.

(f)     For Mortgage Loans (if any) that have been prepaid in full after the Cut off Date and prior to the Closing Date (or, in the case of Subsequent Mortgage Loans, after the Subsequent Cut-off Date and prior to the Transfer Date), the Depositor, in lieu of delivering the above documents, herewith delivers to any NIMS Insurer and the Trustee, or to the applicable Custodian on behalf of the Trustee, an Officer's Certificate which shall include a statement to the effect that all amounts received in connection with such prepayment that are required to be deposited in the Collection Account pursuant to Section 4.01 have been so deposited.  All original documents that are not delivered to the Trustee or the applicable Custodian on behalf of the Trustee shall be held by the Master Servicer or the applicable Servicer in trust for the benefit of the Trustee and the Certificateholders.

Section 2.02     Acceptance of Trust Fund by Trustee: Review of Documentation for Trust Fund.

(a)     The Trustee, by execution and delivery hereof, acknowledges receipt by it or by the applicable Custodian on its behalf of the Mortgage Files pertaining to the Initial Mortgage Loans listed on the Mortgage Loan Schedule, subject to review thereof by the Trustee, or by the applicable Custodian on behalf of the Trustee, under this Section 2.02.  The Trustee, or the applicable Custodian on behalf of the Trustee, will execute and deliver to the Depositor, the Master Servicer, the Trustee and any NIMS Insurer on the Closing Date an Initial Certification in the form annexed hereto as Exhibit B-1 (or in the form annexed to the applicable Custodial Agreement as Exhibit B-1, as applicable).

(b)     Within 45 days after the Closing Date (or, in the case of Subsequent Mortgage Loans, within 45 days after the applicable Transfer Date), the Trustee or the applicable Custodian on behalf of the Trustee, will, for the benefit of Holders of the Certificates, review each Mortgage File to ascertain that all requisite documents set forth in Section 2.01 have been received and appear on their face to contain the requisite signatures by or on behalf of the respective parties thereto, and shall deliver to the Trustee, the Depositor, the Master Servicer and any NIMS Insurer an Interim Certification in the form annexed hereto as Exhibit B-2 (or in the form annexed to the applicable Custodial Agreement as Exhibit B 2, as applicable) to the effect that, as to each Mortgage Loan listed in the Mortgage Loan Schedule (other than any Mortgage Loan prepaid in full or any Mortgage Loan specifically identified in such certification as not covered by such certification), (i) all of the applicable documents specified in Section 2.01(c) are in its possession and (ii) such documents have been reviewed by it and appear to relate to such Mortgage Loan.  The Trustee, or the applicable Custodian on behalf of the Trustee, shall determine whether such documents are executed and endorsed, but shall be under no duty or obligation to inspect, review or examine any such documents, instruments, certificates or other papers to determine that the same are valid, binding, legally effective, properly endorsed, genuine, enforceable or appropriate for the represented purpose or that they have actually been recorded or are in recordable form or that they are other than what they purport to be on their face. Neither the Trustee nor any applicable Custodian shall have any

servicing will not result in a qualification, withdrawal or downgrade of the then-current rating of any of the Certificates; and

(vi)     The Seller shall, at its cost and expense, take such steps, or cause the terminated Servicer to take such steps, as may be necessary or appropriate to effectuate and evidence the transfer of the servicing of the Mortgage Loans to such successor servicer, including, but not limited to, the following: (A) to the extent required by the terms of the Mortgage Loans and by applicable federal and state laws and regulations, the Seller shall cause the prior Servicer to timely mail to each obligor under a Mortgage Loan any required notices or disclosures describing the transfer of servicing of the Mortgage Loans to the successor servicer; (B) prior to the effective date of such transfer of servicing, the Seller shall cause the prior Servicer to transmit to any related insurer notification of such transfer of servicing; (C) on or prior to the effective date of such transfer of servicing, the Seller shall cause the prior Servicer to deliver to the successor servicer all Mortgage Loan Documents and any related records or materials; (D) on or prior to the effective date of such transfer of servicing, the Seller shall cause the prior Servicer to transfer to the successor servicer, or, if such transfer occurs after a Servicer Remittance Date but before the next succeeding Deposit Date, to the Trustee, all funds held by the prior Servicer in respect of the Mortgage Loans; (E) on or prior to the effective date of such transfer of servicing, the Seller shall cause the prior Servicer to, after the effective date of the transfer of servicing to the successor servicer, continue to forward to such successor servicer, within one Business Day of receipt, the amount of any payments or other recoveries received by the prior Servicer, and to notify the successor servicer of the source and proper application of each such payment or recovery; and (F) the Seller shall cause the prior Servicer to, after the effective date of transfer of servicing to the successor servicer, continue to cooperate with the successor servicer to facilitate such transfer in such manner and to such extent as the successor servicer may reasonably request.  Notwithstanding the foregoing, the prior Servicer shall be obligated to perform the items listed above to the extent provided in the Servicing Agreement.

IN WITNESS WHEREOF, the parties hereto have caused their names to be signed hereto by their respective officers hereunto duly authorized as of the day and year first above written.

STRUCTURED ASSET SECURITIES
CORPORATION, as Depositor

By:   /s/ Ellen V. Kiernan
        Name: Ellen V. Kiernan
        Title:   Senior Vice President


LASALLE BANK NATIONAL ASSOCIATION,
as Trustee

By:   /s/ Thomas Baumgart
        Name:  Thomas Baumgart
        Title:   Vice President



AURORA LOAN SERVICES INC., as Master
Servicer

By:   /s/ E. Todd Whittemore
        Name: E. Todd Whittemore
        Title:   Executive Vice President

WELLS FARGO BANK MINNESOTA,
NATIONAL ASSOCIATION, as Securities
Administrator

By:   /s/ Stacey Taylor
      Name: Stacey Taylor
      Title:   Assistant Vice President


THE MURRAYHILL COMPANY,
as Credit Risk Manager

By:   /s/ Kevin J. Kanouff
      Name: Kevin J. Kanouff
      Title:   President and General Counsel

Solely for purposes of Section 11.15,
accepted and agreed to by:

LEHMAN BROTHERS HOLDINGS INC.


By: /s/ Joseph J. Kelly
    Name:  Joseph J. Kelly
    Title:   Authorized Signatory

EXHIBIT A

FORMS OF CERTIFICATES

EXHIBIT B 1

FORM OF INITIAL CERTIFICATION

_____
Date

Wells Fargo Bank Minnesota, National Association,
as Securities Administrator

By:_____
    [Signature]
    [Title]

## SCHEDULE A

MORTGAGE LOAN SCHEDULE