# EXHIBIT 4

8-K 1 c24833e8vk.htm CURRENT REPORT

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, D. C. 20549

---

# FORM 8-K

## CURRENT REPORT
### Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934

**Date of Report (date of earliest event reported): March 17, 2008**

# H&R BLOCK, INC.
(Exact name of registrant as specified in charter)

| Missouri | 1-6089 | 44-0607856 |
|---|---|---|
| (State of Incorporation) | (Commission File Number) | (I.R.S. Employer Identification Number) |

**One H&R Block Way, Kansas City, MO 64105**
(Address of Principal Executive Offices) (Zip Code)

**(816) 854-3000**
(Registrant's telephone number, including area code)

**Not Applicable**
(Former name or former address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

☐   Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐   Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐   Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐   Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Item 1.01. Entry into a Material Definitive Agreement.**

On March 17, 2008, H&R Block, Inc. (the "Company"), Option One Mortgage Corporation ("OOMC"), an indirect wholly owned subsidiary of the Company, and the following subsidiaries of OOMC: First Option Asset Management Services, Inc., First Option Asset Management Services, LLC, Option One Insurance Agency, Inc., Option One Mortgage Services, Inc., Premier Mortgage Services of Washington, Inc., Premier Property Tax Services, LLC and Premier Trust Deed Services, Inc., entered into a purchase agreement with AH Mortgage Acquisition Co., Inc., the mortgage loan servicing arm of WL Ross & Co. LLC, to sell OOMC's mortgage loan servicing business.

A copy of the purchase agreement is filed herewith as Exhibit 10.1, and is incorporated into this Current Report on Form 8-K by reference.

**8.01. Other Events.**

On March 17, 2008, the Company issued a press release regarding the material terms of the purchase agreement described in Item 1.01. A copy of the press release is furnished herewith as Exhibit 99.1.

**9.01. Financial Statements and Exhibits.**

(d)  Exhibits

| Exhibit Number | Description |
| --- | --- |
| 10.1 | Purchase Agreement by and between H&R Block, Inc., Option One Mortgage Corporation ("OOMC"), certain subsidiaries of OOMC and AH Mortgage Acquisition Co., Inc., dated as of March 17, 2008. |
| 99.1 | Press Release Issued March 17, 2008.* |

_____

\*      Furnished

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

**H&R BLOCK, INC.**

Date: March 17, 2008          By:   /s/ Bret G. Wilson
                                      Bret G. Wilson
                                      Vice President and Secretary

EXHIBIT INDEX

10.1        Purchase Agreement by and between H&R Block, Inc., Option One Mortgage Corporation ("OOMC"), certain subsidiaries of OOMC and AH Mortgage Acquisition Co., Inc., dated as of March 17, 2008.

99.1        Press Release issued March 17, 2008.*

---

*      Furnished

EX-10.1 2 c24833exv10w1.htm PURCHASE AGREEMENT

Exhibit 10.1

**PURCHASE AGREEMENT**

**by and among**

**OPTION ONE MORTGAGE CORPORATION,**

**AH MORTGAGE ACQUISITION CO., INC.,**

**THE ENTITIES LISTED ON EXHIBIT A HERETO, and**

**H&R BLOCK, INC,**
**for the limited purpose set forth in Section 4.05 hereof**

**dated as of**

**March 17, 2008**

**TABLE OF CONTENTS**

I. Purchase and Sale                                                                  1
  1.01. Assets                                                               1
  1.02. Liabilities                                                          3
  1.03. Assignment of Contracts and Rights                                   5
  1.04. Closing Date Cash Payment                                            6
  1.05. Closing; Closing Deliveries and Actions                              6
  1.06. Closing Date Cash Payment Adjustment                                 8
  1.07. Allocation of Final Cash Payment                                    10
  1.08. Collection of Specified Other Advances                              11
  1.09. Non-Consent Servicing Assets                                        11
  1.10. Ineligible Advances                                                 12
  1.11. Seller-Financed Advances                                            13
II. Representations and Warranties of The Sellers                                    13
  2.01. Organization                                                        13
  2.02. Authority; Enforceability                                           14
  2.03. Non-Contravention                                                   14
  2.04. Governmental Consents                                               14
  2.05. Indian Entity; OOAC; Investments                                    15
  2.06. Financial Statements                                                16
  2.07. Subsequent Events                                                   16
  2.08. Taxes                                                               16
  2.09. Litigation                                                          17
  2.10. Compliance with Law; Permits                                        17
  2.11. Employee Benefits                                                   17
  2.12. Labor Relations                                                     18
  2.13. Real Property                                                       18
  2.14. Intellectual Property                                               19
  2.15. Material Contracts                                                  21
  2.16. Environmental Matters                                               23
  2.17. Affiliate Transactions                                              24

| | |
|---|---|
| 2.18. Brokers | 24 |
| 2.19. Loan Servicing | 24 |
| 2.20. Title to the Purchased Assets; Sufficiency of the Purchased Assets | 25 |
| 2.21. No Warranty on Legacy IT Systems | 25 |
| 2.22. No Other Representations or Warranties | 25 |
| III. Representations and Warranties of Purchaser | 26 |
| 3.01. Organization | 26 |
| 3.02. Authority; Enforceability | 26 |
| 3.03. Non-Contravention | 26 |
| 3.04. Governmental Consents | 27 |
| 3.05. Availability of Funds; Financing | 27 |
| 3.06. Investment Intent | 28 |
| 3.07. Brokers | 28 |
| 3.08. Litigation | 28 |
| 3.09. No Other Representations or Warranties | 28 |
| IV. Covenants of The Sellers | 28 |
| 4.01. Conduct of the Business | 28 |
| 4.02. Access to Information; Confidentiality | 30 |
| 4.03. Assistance in Transfer of Licenses, Permits and Registrations | 31 |
| 4.04. Third-Party Consents | 31 |
| 4.05. Parent Guarantee; Right to Receive Payments | 31 |
| 4.06. Settlement of Intercompany Accounts | 32 |
| 4.07. List of Registered Intellectual Property | 32 |
| 4.08. Trailing Final Documents | 32 |
| V. Covenants of Purchaser | 33 |
| 5.01. Access | 33 |
| 5.02. Releases under Certain Contracts | 33 |
| 5.03. Contacts with Customers, Suppliers, Employees, etc | 33 |
| VI. Covenants of Purchaser and The Sellers | 33 |
| 6.01. Commercially Reasonable Efforts; Further Assurances | 33 |
| 6.02. HSR Clearance | 35 |
| 6.03. Public Announcements | 35 |
| 6.04. Trademarks and Tradenames of the Sellers | 35 |

| | |
|---|---|
| 6.05. Notices of Certain Communications | 36 |
| 6.06. Non-Solicitation | 37 |
| 6.07. Notices of Certain Matters | 37 |
| 6.08. Ancillary Agreements | 38 |
| VII. Tax Matters | 38 |
| 7.01. General | 38 |
| 7.02. Tax Cooperation | 38 |
| 7.03. Transfer Taxes | 38 |
| 7.04. Property Taxes | 39 |
| VIII. Tax Matters with respect to the Indian Entity and Option One Advance Corporation | 39 |
| 8.01. General | 39 |
| 8.02. Tax Cooperation | 39 |
| 8.03. Transfer Taxes | 40 |
| 8.04. Tax Sharing Agreements; Apportionment; Return Filings; Refunds and Credits; Limitations on Allocations; and Section 338(h)(10) Election | 40 |
| 8.05. Tax Indemnification | 44 |
| IX. Employees And Employee Benefits | 45 |
| 9.01. Employee Benefits and Compensation | 45 |
| 9.02. Employee Matters | 47 |
| 9.03. Impermissibility; Good Faith | 48 |
| 9.04. No Third-Party Beneficiaries | 48 |
| X. Conditions to Closing | 48 |
| 10.01. Conditions to Each Party's Obligations | 48 |
| 10.02. Conditions to Obligation of Purchaser | 49 |
| 10.03. Conditions to Obligation of Seller | 49 |
| 10.04. Frustration of Closing Conditions | 50 |
| XI. Termination | 50 |
| 11.01. Grounds for Termination | 50 |
| 11.02. Effect of Termination | 50 |
| XII. Survival; Indemnification; Arbitration | 51 |
| 12.01. Survival | 51 |

| | |
|---|---|
| 12.02. Indemnification of Purchaser by Sellers | 51 |
| 12.03. Indemnification of the Sellers by Purchaser | 52 |
| 12.04. Procedures Relating to Indemnification | 52 |
| 12.05. Limitations on Indemnification | 54 |
| 12.06. Agreement to Arbitrate | 54 |
| 12.07. Exclusive Remedy | 56 |
| XIII. Miscellaneous | 56 |
| 13.01. Definitions | 56 |
| 13.02. Notices | 71 |
| 13.03. Amendments and Waivers | 73 |
| 13.04. Expenses | 73 |
| 13.05. Successors and Assigns | 73 |
| 13.06. Governing Law | 73 |
| 13.07. Specific Performance; Jurisdiction | 73 |
| 13.08. Waiver of Punitive and Other Damages and Jury Trial | 74 |
| 13.09. Counterparts; Effectiveness; Third Party Beneficiaries | 74 |
| 13.10. Other Definitional and Interpretative Provisions | 74 |
| 13.11. Entire Agreement | 75 |
| 13.12. Disclosure Letter | 75 |
| 13.13. Severability | 75 |

## TABLE OF EXHIBITS AND SCHEDULES

**Exhibits**

| | |
|---|---|
| Exhibit A | Selling Subsidiaries |
| Exhibit B | Form of General Assignment and Bill of Sale |
| Exhibit C | Form of Assignment and Assumption Agreement |
| Exhibit D | Post-Closing Cooperation Agreement Term Sheet |
| Exhibit E | Post-Closing Servicing Agreement Term Sheet |
| Exhibit F | Debt Commitment |

<u>Disclosure Letter</u>

| Section | Description |
|---|---|
| Section 1.01(a)(viii) | Telephone / Fax Numbers and Domain Names |
| Section 1.01(a)(x) | Servicing IT Systems |
| Section 1.01(a)(xi) | Legacy IT Systems |
| Section 1.01(b)(vii) | Excluded Assets |
| Section 1.06(a) | Sample Statement |
| Section 1.11 | Seller Financed Advances |
| Section 2.01 | Foreign Qualifications |
| Section 2.03 | Non-Contravention |
| Section 2.04 | Required Regulatory Approvals |
| Section 2.05 | Indian Entity; OOAC; Investments |
| Section 2.06 | Financial Statements |
| Section 2.07 | Subsequent Events |
| Section 2.08 | Taxes |
| Section 2.09 | Litigation |
| Section 2.10 | Compliance with Laws |
| Section 2.11 | Employee Plans |
| Section 2.12 | Labor Relations |
| Section 2.13 | Real Property |
| Section 2.14 | Business Intellectual Property |
| Section 2.15 | Material Contracts |
| Section 2.16 | Environmental |
| Section 2.17 | Affiliate Transactions |
| Section 2.19 | Loan Servicing |
| Section 2.20 | Sufficiency of Assets |
| Section 4.01 | Conduct of Business |
| Section 5.02 | Seller Guarantees |
| Section 9.01 | Employee Matters |
| Section 10.01(c) | Required Closing Consents |
| Section 13.01(a) | Amendment Advances |
| Section 13.01(b) | Documents Employees |
| Section 13.01(c) | Ineligible Employees |
| Section 13.01(d) | Knowledge of Sellers |
| Section 13.01(e) | Low-Balance Advances |
| Section 13.01(f) | Pending Transfer Advances |
| Section 13.01(g) | Whole Loan Advances |

## PURCHASE AGREEMENT

This PURCHASE AGREEMENT, dated as of March 17, 2008 (this "Agreement"), is by and among Option One Mortgage Corporation, a California corporation (the "Company"), the entities listed on Exhibit A hereto (the "Selling Subsidiaries" and together with the Company, the "Sellers"), AH Mortgage Acquisition Co., Inc., a Delaware corporation ("Purchaser", and together with the Sellers, the "Parties"), and, for the limited purpose set forth in Section 4.05 hereof, H&R Block, Inc., a Missouri corporation ("Parent").

## RECITALS

1. The Sellers are engaged in the business of servicing residential mortgage loans (the "Business").

2. On the terms and conditions contained in this Agreement, the Sellers desire to sell and assign to Purchaser, and Purchaser desires to purchase and assume, all of the Purchased Assets and Assumed Liabilities (the "Purchase").

3. In order to induce Purchaser to enter into this Agreement, Parent desires to guarantee the payment and performance of all obligations, liabilities and indemnities of Sellers pursuant to Section 4.05.

NOW, THEREFORE, the Parties agree as follows:

## I. PURCHASE AND SALE

1.01.  *Assets.* (a) *Purchased Assets.* The Purchaser will purchase from the Sellers, and the Sellers will Transfer, or cause to be Transferred, to the Purchaser, at the Closing, all the Sellers' right, title and interest in, to and under the Purchased Assets, free and clear of all Liens other than Permitted Liens. Notwithstanding any other provision of this Agreement, Purchaser will not purchase or acquire or otherwise obtain any right, title or interest in any Excluded Asset. For purposes of this Agreement, the "Purchased Assets" means the following assets, properties and rights as of the Closing Date, in each case to the extent owned by the Sellers, without duplication:

(i) all assets reflected in the Final Statement;

(ii) (A) all assets reflected in the Business Balance Sheet, (B) all assets that have been written off, expensed or fully depreciated that, had they not been written off, expensed or fully depreciated, would have been reflected in the Business Balance Sheet in accordance with the accounting principles and policies under which the Business Balance Sheet was prepared, and (C) all assets acquired by Sellers after the date of the Business Balance Sheet that would be reflected in the balance sheet of the Business as of the Closing Date if such balance sheet was prepared using the same accounting principles and policies under which the Business Balance Sheet was prepared;

(iii) the Servicing Rights;

(iv) the Assigned Contracts;

(v) the Business Intellectual Property and the Licensed Intellectual Property;

(vi) all guarantees and warranties of third parties to the extent that they relate to the ownership or operation of the Business or the Purchased Assets;

(vii) all fixed assets and tangible personal property, whether owned or leased, including fixtures, building equipment, fittings, furniture, computer hardware, office equipment, and other tangible personal property that are located on the Leased Real Property or primarily used in the operation of the Business;

(viii) the telephone and facsimile numbers, websites and Domain Names primarily used in the operation of the Business, including those listed on Section 1.01(a)(viii) of the Disclosure Letter;

(ix) all files, documents, instruments, papers, books and records (whether in paper, digital or other tangible or intangible form), including all financial records, Tax records, technical information, operating and production records, quality control records, blueprints, research and development notebooks and files, customer credit data, manuals, engineering and scientific data, sales and promotional literature, drawings, technical plans, business plans, budgets, price lists, lists of customers and suppliers and human resources and employee benefits data relating to Transferred Employees, in each case, that are located on the Leased Real Property or primarily used in the operation of the Business;

(x) all Servicing IT Systems, including those set forth in Section 1.01(a)(x) of the Disclosure Letter, and all source code for any software owned by any Seller included in Servicing IT Systems;

(xi) Legacy IT Systems;

(xii) the Assumed Plans, including any trusts, insurance arrangements or other assets held pursuant to, or set aside to fund the obligations under any such Assumed Plans;

(xiii) subject to Section 4.03, any Permits primarily used in the operation of the Business, including, to the extent transferable, all Permits held by or related to First Option Asset Management, Inc. or First Option Asset Management, LLC;

(xiv) the Indian Entity Equity Interests;

(xv) all of the capital stock of Option One Advance Corporation ("Option One Advance Corporation", and such stock, the "OOAC Stock");

2

(xvi) any residual interests in Option One Advance Trust 2007-ADV2 (the "Option One Trust") held by the Sellers or any of their Affiliates;

(xvii) all rights, claims and causes of action in favor of the Business arising under or in respect of any Purchased Asset included in clauses (i) through (xi), inclusive, of this Section 1.01(a); and

(xviii) any and all other assets owned immediately prior to the Closing Date by any Seller that are primarily used in the operation of the Business.

Notwithstanding anything in this Section 1.01(a) to the contrary, at the Closing the Indian Entity Minority Interest will be transferred to a designee of Purchaser (which may not be Purchaser) in lieu of Purchaser.

(b) *Excluded Assets*. At the Closing, Purchaser will not purchase, acquire or otherwise obtain any right, title or interest in any of the following (collectively, the "Excluded Assets"):

(i) all Intellectual Property of the Sellers and their respective Affiliates other than (A) the Business Intellectual Property, (B) the Licensed Intellectual Property and (C) the Legacy IT Systems;

(ii) all claims for and rights to receive refunds, credits, rebates, or similar payments of Taxes to the extent such Taxes were paid by or on behalf of the Sellers, all Tax Returns, and all notes, worksheets, files or documents relating thereto;

(iii) all assets, properties and rights of the Sellers and their respective Affiliates other than the Purchased Assets;

(iv) any Employee Plans that are not Assumed Plans;

(v) any assets of an Employee Plan other than an Assumed Plan, including any trusts, insurance arrangements or other assets held pursuant to, or set aside to fund the obligations of the Sellers and their Affiliates under, any such Employee Plan;

(vi) the Names;

(vii) all assets identified in Section 1.01(b)(vii) of the Disclosure Letter;

(viii) the Non-Consent Servicing Agreements and Non-Consent Servicing Advances; and

(ix) the Ineligible Advances.

1.02. *Liabilities*. (a) *Assumed Liabilities*. Effective from and after the Closing, the Purchaser will assume and agree to pay, perform, be solely responsible for

3

and discharge the Assumed Liabilities. "Assumed Liabilities" means the following Liabilities of the Sellers (and no other Liabilities):

(i) all Liabilities of Sellers under the Assigned Contracts that arise out of or relate to the operation of the Business from and after the Closing;

(ii) all Liabilities of Sellers under the Assumed Plans arising or relating to the period on or before the Closing Date, to the extent included in the Balance Sheet Liabilities;

(iii) all Liabilities to the extent resulting from or arising out of the conduct of the Business or relating to the ownership, use or condition of the Purchased Assets, in each case, from and after the Closing;

(iv) all Liabilities for salaries, wages and bonuses owed to Transferred Employees who are employed with the Indian Entity on the Closing Date, or their dependents or beneficiaries, and accrued on or prior to, but payable after, the Closing Date to the extent included in the Balance Sheet Liabilities;

(v) all Liabilities for accrued but not taken vacation, personal days, sick days and holidays of Transferred Employees to the extent included in the Balance Sheet Liabilities;

(vi) all Liabilities relating to, resulting from, caused by or arising out of workers' compensation, occupational health and safety, occupational disease, occupational injury or similar workplace issues to the extent involving or relating to Transferred Employees who are employed with the Indian Entity on the Closing Date, that arise from events that occur on or prior to the Closing Date, to the extent included in the Balance Sheet Liabilities;

(vii) all Liabilities relating to, arising from, caused by or arising out of workers' compensation, occupational health and safety, occupational disease, occupational injury or similar workplace issues to the extent involving or relating to Transferred Employees and arising from events that occur after the Closing;

(viii) all Liabilities arising out of Actions primarily relating to services performed by the Business, whether commenced before, on or after the Closing Date, in which the plaintiff is an individual borrower and the asserted violation relates only to a single mortgage loan or multiple mortgage loans issued to the same borrower or group of related borrowers, but only to the extent that such Liabilities are recoverable from the relevant trust, investors or owner of the subject Mortgage Loans in accordance with the terms of the applicable Servicing Agreement (the "Assumed Legacy Litigation Liabilities"). For the avoidance of doubt, the Assumed Legacy Litigation Liabilities that are subject to this clause (v) will be deemed not to include any Actions (A) brought by Governmental Authorities or (B) that are class actions; and

(ix) any other Balance Sheet Liabilities.

4

(b) *Retained Liabilities*. Notwithstanding any other provision of this Agreement, Purchaser is not assuming and will not be liable for any Liabilities of any Seller other than Assumed Liabilities (the "Retained Liabilities"). The Retained Liabilities will remain the sole responsibility of, and will be paid, performed and discharged by the Sellers. Without limiting the foregoing, the Retained Liabilities will include the following:

(i) all Liabilities of the Sellers to the extent they relate to or arise out of their wholesale mortgage loan origination business, including any third-party right to put any such Mortgage Loan back to any of the Sellers and any other related Mortgage Loan repurchase obligations;

(ii) all Liabilities arising out of or relating to Excluded Assets;

(iii) all Liabilities of Sellers under the Assigned Contracts that arise out of or relate to the operation of the Business prior to the Closing;

(iv) other than the Assumed Legacy Litigation Liabilities and the Balance Sheet Liabilities, all Liabilities to the extent resulting from or arising out of the conduct of the Business or relating to the ownership, use or condition of the Purchased Assets, in each case, prior to the Closing, including (A) Liabilities imposed under Environmental Laws, and (B) any Liabilities arising out of litigation attributable to a Seller's charging of interest on advances on non-escrowed loans in violation of any applicable contractual obligations or applicable Law;

(v) all Liabilities arising out of any Employee Plan that is not an Assumed Plan, except as specifically assumed by Purchaser pursuant to Section 1.02(a)(vii), 9.01(b) or 9.01(i), and all Liabilities of the Sellers under the Assumed Plans arising or relating to the period on or before the Closing Date, to the extent not included in the Balance Sheet Liabilities;

(vi) other than as otherwise provided herein, all Liabilities arising from or relating to the employment with, termination of employment by, or employment practices of Sellers and their Affiliates;

(vii) all Liabilities relating to Employees of the Business who do not become Transferred Employees as provided in Article IX, and all Liabilities relating to any non-Business employee, director or other service provider of the Sellers and their Affiliates; and

(viii) all Liabilities of the Sellers for Taxes with respect to all periods prior to, including or following the Closing Date.

1.03. *Assignment of Contracts and Rights*. Notwithstanding anything in this Agreement to the contrary, this Agreement will not constitute an agreement to Transfer any Assigned Contract or any other Contract to which a Seller is a party or any claim or right or any benefit arising thereunder or resulting therefrom if and for so long as such Transfer, without the approval, consent or waiver of a third party, would

5

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

**OPTION ONE MORTGAGE CORPORATION**

By:    /s/ Fabiola N. Camperi
      Name:  Fabiola N. Camperi
      Title:    President

**FIRST OPTION ASSET MANAGEMENT SERVICES, INC.**

By:    /s/ Fabiola N. Camperi
      Name:  Fabiola N. Camperi
      Title:    President

**FIRST OPTION ASSET MANAGEMENT SERVICES, LLC**

By:    /s/ Fabiola N. Camperi
      Name:  Fabiola N. Camperi
      Title:    President

**OPTION ONE INSURANCE AGENCY, INC.**

By:    /s/ Fabiola N. Camperi
      Name:  Fabiola N. Camperi
      Title:    President

*[Signature Page to Purchase Agreement]*

**OPTION ONE MORTGAGE SERVICES, INC.**

By:     /s/ Fabiola N. Camperi
       Name:   Fabiola N. Camperi
       Title:     President

**PREMIER MORTGAGE SERVICES OF
WASHINGTON, INC.**

By:     /s/ Fabiola N. Camperi
       Name:   Fabiola N. Camperi
       Title:     President

**PREMIER PROPERTY TAX SERVICES, LLC**

By:     /s/ Fabiola N. Camperi
       Name:   Fabiola N. Camperi
       Title:     President

**PREMIER TRUST DEED SERVICES, INC.**

By:     /s/ Fabiola N. Camperi
       Name:   Fabiola N. Camperi
       Title:     President

**H&R BLOCK, INC.,**
for the limited purpose set forth in Section 4.05
hereof

By:     /s/ Becky S. Shulman
       Name:   Becky S. Shulman
       Title:     Senior Vice President and Treasurer

*[Signature Page to Purchase Agreement]*

**AH MORTGAGE ACQUISITION CO., INC.**

By:    /s/ Josh R. Seegopaul
      Name:  Josh R. Seegopaul
      Title:    Vice President

*[Signature Page to Purchase Agreement]*

8-K 1 form8k-043008.htm OOMC SERVICING SALE

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, D. C. 20549

_____

# FORM 8-K

### CURRENT REPORT
**Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934**

Date of Report (date of earliest event reported): April 30, 2008

# H&R BLOCK, INC.
(Exact name of registrant as specified in charter)

| **Missouri** | **1-6089** | **44-0607856** |
|---|---|---|
| (State of Incorporation) | (Commission File Number) | (I.R.S. Employer Identification Number) |

**One H&R Block Way, Kansas City, MO 64105**
(Address of Principal Executive Offices) (Zip Code)

**(816) 854-3000**
(Registrant's telephone number, including area code)

**Not Applicable**
(Former name or former address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

☐ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Case 1:17-cv-00394-WES-DA    Document 26-5    Filed 03/26/19    Page 23 of 27 PageID #: 612

**Item 2.01.    Completion of Acquisition or Disposition of Assets.**

On April 30, 2008, Option One Mortgage Corporation ("OOMC"), an indirect wholly owned subsidiary of H&R Block, Inc. ("the Company"), completed the previously announced sale of OOMC's mortgage loan servicing business to American Home Mortgage Servicing, Inc. (formerly AH Mortgage Acquisition Co., Inc.) ("American Home"), pursuant to a Purchase Agreement dated March 17, 2008 (the "Purchase Agreement").

The estimated purchase price at closing was equal to approximately $1.3 billion, of which approximately $980 million was used to pay off the outstanding debt on the Company's servicing advance facility. After repayment of the servicing advance facility, the Company realized net cash proceeds of slightly more than $230 million, and also retained a receivable relating to certain servicing assets of approximately $100 million. The Company anticipates that it will realize approximately $57 million of this receivable during the 60 day period following the closing, with the balance representing a long-term receivable to be collected in accordance with the terms of the Purchase Agreement. Subsequent to the closing, the parties will determine a final value of specified balance sheet items as of the closing date utilizing a process set forth in the Purchase Agreement. To the extent that this final value deviates from the value utilized to calculate the estimated purchase price, an equalizing payment will be made to American Home or the Company, as applicable.

**8.01.    Other Events.**

On May 1, 2008, the Company issued a press release announcing the matters described in Item 2.01 of this Current Report on Form 8-K . A copy of the press release is furnished herewith as Exhibit 99.1.

**9.01.    Financial Statements and Exhibits.**

(d)    Exhibits

| Exhibit Number | Description |
| --- | --- |
| 99.1 | Press Release Issued May 1, 2008. |

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

**H&R BLOCK, INC.**

Date:    May 6, 2008            By: /s/ Andrew J. Somora

                                    Andrew J. Somora

                                    Assistant Secretary

EXHIBIT INDEX

99.1          Press Release issued May 1, 2008.

EX-99 2 exh99-043008.htm 99.1 PRESS RELEASE

Exhibit 99.1



**News Release**

**For Further Information**
Investor Relations: Scott Dudley, 816.854.4505, scott.dudley@hrblock.com
Media Relations:    Nancy Mays, 816.854.4537, nmays@hrblock.com

## H&R Block Closes Sale of Option One Mortgage Servicing Business to Affiliate of WL Ross & Co. LLC.

- *Aggregate servicing debt of more than $980 million repaid in full*
- *Net cash proceeds of more than $230 million*
- *Company's short-term bank credit lines repaid in full*
- *Transaction not expected to result in significant gain or loss in reported financial results*

For Immediate Release May 1, 2008

    KANSAS CITY, Mo. – H&R Block Inc. (NYSE: HRB) today announced that it closed the sale of the mortgage loan servicing business of its Option One Mortgage Corporation ("OOMC") subsidiary effective April 30, 2008. As previously announced, the purchaser was American Home Mortgage Servicing, Inc. ("American Home"), an affiliate of WL Ross & Co. LLC. Proceeds of the transaction at closing were approximately $1.3 billion.

    "The closing of the Option One sale is a significant milestone in the transformation and refocusing of H&R Block," said Richard C. Breeden, H&R Block's Chairman. "We are pleased to safely transfer the servicing responsibilities of Option One into the hands of a respected and responsible purchaser. More importantly, we delivered on the promise we made to shareholders to change the future course of our company. Today's transaction reduces risks and distractions from doing what we do best, which is serving the tax preparation needs of tens of millions of clients."

    At closing, the Company utilized the proceeds in part to repay more than $980 million on its servicing advance facility, representing the entire outstanding balance of this facility. After repayment of servicing advances, the Company realized net cash proceeds of slightly more than $230 million, and also retained a receivable relating to certain servicing assets of approximately $100 million. The Company anticipates that it will realize approximately $57 million of this receivable over the next 60 days, with the balance representing a long-term receivable. As previously

-- more --

6/19/2018    Case 1:17-cv-00394-WES-LDA    https://www.sec.gov/Archives/edgar/data/12659/... Document 26-5    Filed 03/27/18    Page 27 of 27 PageID #: 616

announced, the Company does not believe that the transaction will result in a significant increase or decrease in reported income, although the impact of the transaction on reported income will not be known definitively until the completion of all post-closing adjustments.

In addition, the Company also announced that it completed repayment of the entire outstanding balance under its revolving committed line of credit ("CLOC") from a syndicate of lending banks. With the repayment of the entire outstanding balance of both its servicing advance facility and its CLOC, the Company's outstanding short-term indebtedness has been reduced to zero.

H&R Block's financial advisor in connection with the transaction was Lazard and legal advisors included the law firms of Jones Day and Manatt, Phelps & Phillips.

**Forward Looking Statements**

This announcement may contain forward-looking statements, which are any statements that are not historical facts. These forward-looking statements are based upon the current expectations of the company and there can be no assurance that such expectations will prove to be correct. Because forward-looking statements involve risks and uncertainties and speak only as of the date on which they are made, the company's actual results could differ materially from these statements. These risks and uncertainties relate to, among other things, uncertainties in the subprime mortgage industry and its impact on any operations of Option One Mortgage Corporation that continue to be operated by H&R Block; potential litigation and other contingent liabilities arising from Option One Mortgage Corporation's historical and ongoing operations; uncertainties pertaining to the commercial debt market; competitive factors; regulatory capital requirements; the company's effective income tax rate; litigation; uncertainties associated with engaging a new auditor; and changes in market, economic, political or regulatory conditions. Information concerning these risks and uncertainties is contained in Item 1A of the company's 2007 annual report on Form 10-K and in other filings by the company with the Securities and Exchange Commission.

**About H&R Block**
H&R Block Inc. (NYSE: HRB) is the world's preeminent tax services provider, having served more than 400 million clients since 1955 and generating annual revenues of $4 billion in fiscal year 2007.  H&R Block provides income tax return preparation and related services and products via a nationwide network of approximately 13,000 company-owned and franchised offices and through TaxCut® online and software solutions. The company also provides business services through RSM McGladrey and certain consumer financial services. For more information visit our Online Press Center at www.hrblock.com.

# # #