UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

U.S. BANK N.A AS TRUSTEE

FOR THE REGISTERED HOLDERS

OF THE STRUCTURED ASSET

SECURITIES CORPORATION, STRUCTURED

ASSET INVESTMENT LOAN TRUST

MORTGAGE PASS-THROUGH

CERTIFICATES, SERIES 2003-BC11

VS                                    CA: 17-CV-394 WES

MASOUND SHAKOORI ET AL

MOTION IN LIMINE

Defendant, by his attorney files this Motion in Limine. Plaintiff has proposed certain Trial Exhibits, which it seeks to introduce into evidence. These Exhibits are referenced in the attached Exhibit List provided by Plaintiff. The Exhibits, which are the scope of this Motion are as follow:

July 16, 2003 $315,400 Adjustable Rate Note with Option One Mortgage Corporation ("Option One") *Exhibit C*.

October 1, 2003 Assignment and Assumption Agreement between Lehman Brothers Bank, FSB and Lehman Brothers Holdings, Inc., *Exhibit G*.

October 1, 2003 Mortgage Loan Sale and Assignment Agreement, *Exhibit H*.

October 1, 2003 Trust Agreement, *Exhibit I*.

October 1 2003 Servicing Agreement, *Exhibit J*.

October 1, 2003 Mortgage Loan Schedule, *Exhibit K*.

April 30, 2008 American Home Mortgage Servicing, Inc. ("AHMSI") Purchase Agreement, *Exhibit L*.

June 30, 2009 Notices of Resignation and Appointment of Trustee, *Exhibit M*.

For multiple reasons, these documents should not be admitted into evidence.

The Plaintiff claims to be a securitized trust. However the documents which it seeks to admit into evidence have not been authenticated. There is no evidence presented which indicates that the mortgage to Option One Mortgage Corporation was sold to any entity. The October 1, 2003 Assignment and Assumption Agreement between Lehman Brothers Bank, FSB and Lehman Brothers Holdings, Inc. ,referenced as *Exhibit G* does not reference Option One. There is a gap between Option One and Lehman Brothers Bank, FSB, which declared bankruptcy and no longer exists. There is no evidence that Lehman Brothers Bank, FSB ever purchased Defendant's mortgage from Option One or any other entity. This failure to provide this evidence is fatal to this exhibit. There is no loan schedule, nor is there any indication that Lehman Brothers Bank FSB purchased Defendant's mortgage from Option One in this exhibit. Without proof of loan schedules, which include Defendant's mortgage, this document cannot be authenticated as having any

reference whatsoever to Defendant's mortgage to Option One. It should not be admitted on those grounds alone.

The next document which has no relationship with the Option One Mortgage signed by the Defendant is October 1, 2003 Mortgage Loan Sale and Assignment Agreement, between Lehman Brothers Bank, FSB and Lehman Brothers Holding *Exhibit H*. This exhibit does not contain any loan schedule and thus there is again no reference to Defendant's mortgage or any Option One Mortgages for that matter. There is no loan schedule, nor is there any indication that Lehman Brothers Bank Holding purchased Defendant's mortgage from Lehman Brother's Bank in this exhibit. Without proof of loan schedules, which include Defendant's mortgage, this document cannot be authenticated as having any reference whatsoever to Defendant's mortgage to Option One. It should not be admitted on those grounds alone.

The next Exhibit which cannot be admitted into evidence is an internet document which is also not an original document. This document, a purported Trust Agreement between parties other than the Plaintiff is not signed and is a small portion of a complete internet document. It has 19 pages even the internet document has 139 pages. It has no loan schedule and no reference to Defendant's Option One Mortgage or any mortgage,  There is no loan schedule, nor is there any indication

that Lehman Brothers Bank Holding or Structured Assets Securities Corporation purchased Defendant's mortgage from Lehman Brother's Holding or any entity in this exhibit. Without proof of loan schedules, which include Defendant's mortgage, this document cannot be authenticated as having any reference whatsoever to Defendant's mortgage to Option One. should not be admitted on those grounds alone.

The next exhibit which cannot be admitted into evidence is the October 1 2003 Servicing Agreement, *Exhibit J*. It has no loan schedule and is not a purchase agreement. It references May 2003 loans, although Defendant's mortgage and note were dated July 16, 2003. It also is an internet document, which is not signed and obviously is not an original document. There is no way this document can be authenticated and it cannot be admitted into evidence. Without proof of loan schedules, which include Defendant's mortgage, this document cannot be authenticated as having any reference whatsoever to Defendant's mortgage to Option One. should not be admitted on those grounds alone.

Exhibit K purports to be a loan schedule, which is not attached to any document. It has no authentication, nor can it be authenticated without being part of an actual document. However the gap in the chain of title of this mortgage renders this loan schedule inadmissible. The professional reader witness cannot

attest as to what this document is, when it was created, where it was located when it was created, who created it and which entity had possession of it since it was created. There is no testimony that it was a schedule created in conjunction with a sale from Option One to any entity, from Lehman Brothers to any entity, from Lehman Brothers Holding to any entity nor from SASCO to any entity. In short this document cannot be authenticated by any one other than the creator, which was a Lehman Brothers entity, which are all bankrupted entities at this time. Lehman Brothers Bank, Lehman Brothers Holding and.  Structured Assets Securities Corporation all filed bankruptcy in 2009 and are defunct. SASCO  filed as Structured Asset Securities Corp., 09-10558, U.S. Bankruptcy Court, Southern District of New York (Manhattan). The Lehman Bankruptcy is  In re Lehman Brothers Holdings Inc., 08-13555, U.S. Bankruptcy Court, Southern District of New York (Manhattan). These were the only parties with the ability to authenticate any of these documents. Option One was a loan servicer and no longer is. There is no basis for this purported loan schedule or any of these documents to be admitted into evidence.

The April 30, 2008 American Home Mortgage Servicing, Inc. ("AHMSI") Purchase Agreement, *Exhibit L* is nothing but an internet document, which relates to purchasing of servicing rights, not the sale of loans. It is not signed by any persons

and is downloaded from the internet and is not an original document. It should not be admitted into evidence.

The June 30, 2009 Notices of Resignation and Appointment of Trustee, *Exhibit M* , while not an internet document is not an authentic document and cannot be admitted into evidence. It is not original, and was not signed by persons related to Plaintiff or its servicers.  There is no  basis for this document to be admissible.

The next issue regarding these documents is the fact that they are blatant hearsay with no exception available. Plaintiff seeks to admit records of third parties with no verification as to the authenticity of those records and with no evidence as to the accuracy of these purported records and lacks any knowledge of the mailing documents. Without  such verification under the Federal Rules of Evidence, these records are hearsay and cannot be made part of the business records of Ocwen Financial Corporation or PH Mortgage, which will present Howard Handville. No testimony from Lehman Brothers, Option One, Lehman Brothers Holding or SASCO has been presented to authenticate these records and in fact no discovery was provided regarding these documents.

The  decision of the First Circuit Court of Appeals in  *US Bank National Association v. Jones*, 925 F.3d 534 (First Cir., 2019)   references FRE 803(6) and records of third parties and is the basis for Defendant's Motion  in Limine.   In

*Jones*, the Court analyzed the hearsay rule and whether the testimony of a Caliber Loan Servicing employee and an exhibit referencing the status of the loan after two prior servicers was properly admitted under the hearsay rule business record's exception FRE 803(6). The issue in *Jones* was whether there was a sufficient foundation under 803(6) for the current loan servicer employee to testify about the status of the mortgage loan account and how it was boarded into the electronic system of record of the current servicer. In *Jones*, there was live testimony of a witness at a foreclosure trial. The Court set forth the criteria for the admission of records of another servicer. The Court held:

[W]hether a third party's records . . . can be integrated into the records of the offering entity . . . for purposes of admission under the business records exception **is not an issue upon which this circuit has reached a uniform conclusion**" covering every instance. United States v. Savarese, 686 F.3d 1, 12 (1st Cir. 2012). **Rather, the admissibility of the evidence turns on the facts of each case.**

Thus, we have affirmed the admission of business records containing third-party entries without third-party testimony where the entries were **"intimately integrated**" into the business records, FTC v. Direct Marketing Concepts, Inc., 624 F.3d 1, 16 n.15 (1st Cir. 2010), or where the party that produced the business records "**relied on the [third-party] document and documents such as those[] in his business**," United States v. Doe, 960 F.2d 221, 223 (1st Cir. 1992) (internal quotation marks omitted). Conversely, in the absence of third-party evidence, **we have rejected the admission of business records containing or relying on the accuracy of third-party information integrated into the later record where, for example, the later business did not "use[] a procedure for verifying" such information, lacked a "self-interest in assuring the accuracy of the outside information,**" United States v. Vigneau, 187 F.3d 70, 77 & n.6 (1st Cir. 1999) (emphasis omitted), or sought admission of third-party statements made "by a stranger to it," Bradley, 891 F.3d at 35 (quoting Vigneau, 187 F.3d at

75 (alterations omitted)). The key question is whether the records in question are "reliable enough to be admissible." Direct Marketing Concepts, 624 F.3d at 16 n.15..

The Court reviewed the testimony of the trial witness and noted:

In answering that question, we are mindful that the "**reliability of business records is said variously to be supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation**." Fed. R. Evid. 803 advisory committee's note to 1972 proposed rules. The rule seeks "to capture these factors and to extend their impact" by applying them to a "regularly conducted activity." Id (emphasis added).

The District Court had received testimony from a loan servicer employee who had

testified that:

 **Caliber incorporated the previous servicer's records into its own database and "plac[ed] its own financial interest at stake by relying on those records," and that "Caliber's acquisition department took steps to review the previous servicer's records in a way that assured itself of the accuracy of the records**." 330 F. Supp. 3d 530, 543 (D. Me. 2018); see Trial Tr. 28:3-6, 60:17-19.

(emphasis added)

In *Jones*, the Court also noted that the mortgagor did not dispute the transaction history by claiming overbilling or unrecorded payments and did not contest the findings of the District Court that there were no discrepancies. However in this case, Plaintiff should not be allowed to present a witness who merely reads internet documents with no knowledge of whether these documents are original, or accurate records. Since these records are hearsay, they must not be admitted,

regardless of the efforts of professional reader, Howard Handvillle. If the Court decides to hear testimony first, Defendant should be allowed to voir dire this witness to determine the scope and extent of his knowledge regarding the documents in question, before he begins his testimony.

The final document which Defendant challenges is the Loan Payment History, *Exhibit R*. As indicated in the prior Motion in Limine, there were four loan servicers, Option One. American Home Mortgage , prior to its Bankruptcy, then American Home Servicing, inc., which became Homeward Residential, then Ocwen Loan Servicing, then PHH Mortgage.

Ocwen has admitted in three Consent Orders in New York and one in Rhode Island, that its electronic system of record is not accurate. These Consent Orders cast doubt on Ocwen's record keeping and raise issues with the amount of the purported arrearage and the alleged balance. This is a mortgage, whose original servicer , after Option One was American Home Mortgage, then after that entity's bankruptcy was service transferred to American Home Mortgage Servicing, Inc. ("Homeward Residential") and then to Ocwen (now to PHH Mortgage Services). Since the payments belong to other companies, these records were not verified, and no testimony can support the accuracy of the default letter and the amount accelerated. The Federal Rules of Evidence require certain proof of the records of other business entities, and proof of Ocwen's, Homeward

Residential's and American Home Mortgages' records under FRE 901, 902 and the business records exception of the hearsay rule.

Attached to this Memorandum are certified copies of exhibits from the United States District Court for the Southern District of Indiana. Based on these certified documents, Exhibit A is a genuine and authentic certified copy of a letter filed in Todd v. Ocwen et al, Case No. 2:19-cv-00085-JMS-DLP in the United States District Court for the Southern District of Indiana. Exhibit B is a genuine and authentic certified copy of an Exhibit filed in Todd v. Ocwen et al, Case No. 2:19-cv-00085-JMS-DLP in the United States District Court for the Southern District of Indiana. Exhibit C is a genuine and authentic certified copy of a Motion for Sanctions filed in Todd v. Ocwen et al, Case No. 2:19-cv-00085-JMS-DLP in the United States District Court for the Southern District of Indiana.

Ocwen serviced loans using a servicing platform which was called REALServicing. When Ocwen serviced Defendant's loan it utilized REALServicing. PHH services loans using a servicing platform known as Loan Sphere MSP. Loan Sphere MSP is also referenced by the name of Black Knight. PHH uses Loan Sphere/Black Knight to service Counterclaim Plaintiff's loan. PHH has no access to the data compilation on REALServicing regarding Counterclaim Plaintiff's mortgage loan account prior to PHH obtaining servicing.

When PHH commenced servicing it could not verify the accuracy of any electronic data compilation of REALServicing regarding Defendant's mortgage loan account prior to PHH obtaining servicing. Thus PHH has no documents, data or records by which it confirmed and verified the accuracy of the REALServicing records of the defendant's mortgage loan account, when it commenced servicing the loan. The certified records indicate this fact. This is not in compliance with the holding of he First Circuit in Jones.

This Court should reject any PHH records derived from Ocwen or any prior servicers as PHH cannot verify their accuracy. If this Court allows the PHH witness to commence testimony, Defendant requests that he be allowed to voir dire this witness prior to any testimony.

For these reasons the Motion in Limine should be granted and these exhibits should be excluded.

|  |  |
|---|---|
|  | Masoud Shakoori |
|  | By his Attorney |
| March 10, 2022 | /s/ John B. Ennis |
|  | John B. Ennis, Esq. #2135 |
|  | 1200 Reservoir Avenue |
|  | Cranston RI 02920 |
|  | Jbelaw75@gmail.com |

CERTIFICATE OF SERVICE

I certify that I served the attorney for the Plaintiff on March 10, 2022 by electronic filing.

/s/ John B. Ennis