UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                  )
U.S. BANK N.A., as Trustee for the )
Registered Holders of the         )
Structured Asset Securities       )
Corporation, Structured Asset     )
Investment Loan Trust,            )
Mortgage Pass-Through             )
Certificates, Series 2003-BC11,   )
                                  )
          Plaintiff,              )
                                  )
     v.                           )    C.A. No. 17-394 WES
                                  )
MASOUD SHAKOORI-NAMINY a/k/a      )
MASOUD SHAKOORI, BRENDA           )
SHAKOORI-NAMINY, and SAND CANYON  )
CORPORATION,                      )
                                  )
          Defendants.             )
_____)

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

WILLIAM E. SMITH, District Judge.

     This matter came before the Court for a bench trial in April

2022.  Plaintiff U.S. Bank N.A. asks the Court to find that it is

the holder of Defendant Masoud Shakoori-Naminy's mortgage by

equitable assignment so that it may pursue a foreclosure on

Defendant's property in Exeter, Rhode Island.  The trial, held

over two days, featured testimony by Defendant himself, see Apr.

5 Tr. 33:16-17, and Plaintiff's witness Howard Handville, a senior

loan analyst at Ocwen Financial Corporation, see Apr. 18 Tr. 2:20-

24, 4:13-16.

Having considered the exhibits, witness testimony, and the parties' written submissions, the Court concludes that Plaintiff is entitled to equitable assignment of the mortgage. Furthermore, Defendant's Motion in Limine and Motion for Default Judgment and Sanctions, ECF No. 57, is GRANTED IN PART and DENIED IN PART, and Defendant's Motion in Limine, ECF No. 58, is DENIED.

I.   Findings of Fact[1]

A. Origination and Modification of Mortgage Loan

On December 26, 2000, Defendant purchased property located at 1541 Ten Rod Road in Exeter, Rhode Island ("the property"). PXA. On November 5, 2001, he obtained a loan from Finance America, LLC, in the amount of $243,750, secured by a mortgage on the property. PXB; Apr. 5 Tr. 35:3-37:19.

On July 16, 2003, Defendant obtained a $315,400 loan ("the loan") from Option One Mortgage Corporation ("Option One") and executed an Adjustable Rate Note ("the note") payable to Option One on the same day. PXC; Apr. 5 Tr. 39:1-7, 47:15-16, 48:24-49:25. Defendant's initials appear on the first two pages of the note, and his signature appears on the third page. PXC; Apr. 5 Tr. 40:3-17. Attached to the note is an allonge[2] also dated July

---

[1] Some facts not presented in this section are reserved for later discussion and incorporated as additional findings of fact.

[2] An allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further

2

16, 2003, that contains an indorsement in blank[3] signed by Mary Conway, Assistant Secretary of Option One.  PXC.  Neither Defendant's initials nor his signature appear on the allonge, and he testified that the allonge was not attached to the note when he signed it.  Id.; Apr. 5 Tr. 46:10-16.

Defendant also executed a mortgage ("the mortgage") on the property to secure the loan.  PXD; Apr. 5 Tr. 49:20-24.  Option One was the holder of the mortgage, and the mortgage was recorded in the Town of Exeter Land Evidence Records.  PXD; Apr. 5 Tr. 39:1-4.

From the proceeds of the loan, $248,054.40 was paid to Finance America, LLC, extinguishing Defendant's liability on his earlier mortgage loan.  PXE; PXF; Apr. 5 Tr. 50:11-19.  The remaining balance, $53,602.25, was paid to Defendant.  PXE; Apr. 5 Tr. 50:20-22, 52:3-5.

In December 2008, after defaulting on the loan, Defendant entered into a modification agreement with American Home Mortgage

---

indorsements when the original paper is filled with indorsements." Note Cap. Grp., Inc. v. Perretta, 207 A.3d 998, 1000 n.4 (R.I. 2019) (quoting Black's Law Dictionary 92 (10th ed. 2014)).

[3] "An [i]ndorsement in blank is one that does not identify a person to whom it makes the instrument payable.  When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." Mruk v. Mortg. Elec. Reg. Sys., Inc., 82 A.3d 527, 530 n.3 (R.I. 2013) (internal citations and quotations omitted).

Servicing, Inc. ("AHMSI"), which was the servicer for the loan at the time.  PXQ; Apr. 5 Tr. 56:12-17, 59:3-9.  Following the modification, Defendant resumed making payments to AHMSI for an unknown amount of time, but, as of the time of this trial, had not made any mortgage payments in over ten years.  Apr. 5 Tr. 63:18-22, 65:14-16.

B. Defendant's Bankruptcy

Between 2008 and 2015, Defendant filed three bankruptcy petitions in the United States Bankruptcy Court for the District of Rhode Island ("Bankruptcy Court").[4]  PXO; PXT; PXU; PXBB.  On December 31, 2015, in connection with his third petition, the Bankruptcy Court issued a Chapter 7 discharge of all debts.  PXDD; see Apr. 5 Tr. 104:14-19.

II.  Conclusions of Law

A. Equitable Assignment of Mortgage

"In Rhode Island, upon default in the performance of the mortgage, a mortgagee may conduct a foreclosure sale of the property by exercising the statutory power of sale contained in [R.I. Gen. Laws] § 34-11-22, so long as the mortgage contract itself gives the mortgagee the power to do so." Woel v. Christiana

---

[4] On the second petition, Defendant listed LaSalle Bank as a creditor, PXT, PXU, and on the third petition, he listed Ocwen Mortgage Company as a creditor, PXBB, both entities associated with the mortgage.

4

Tr. as Tr. for Stanwich Mortg. Loan Tr. Series 2017-17, 228 A.3d
339, 344-45 (R.I. 2020).   The parties do not dispute that
Defendant's mortgage gives the mortgagee the power to foreclose.
See PXD at 1.  However, under the terms of the mortgage, this power
is granted only to the lender, in this case Option One, and its
"successors and assigns."   Id. at ¶ 12.   Therefore, to have the
authority to conduct a foreclosure sale, Plaintiff must establish
that it is either a successor or assignee of the original mortgagee
through a valid chain of transfers or assignments of the mortgage,
or that it is entitled to equitable assignment of the mortgage.
Plaintiff pursues only the latter option and asks the Court to
find that it is the holder of Defendant's mortgage by equitable

assignment.[5, 6]

### 1. Possession of Note

"[W]here a note has been assigned but there is no written

---

[5] In its Amended Complaint, Plaintiff asked the Court to find that it is entitled to equitable assignment of the mortgage nunc pro tunc as of either October 1, 2003, when the mortgage was purportedly securitized and deposited into trust, December 15, 2008, when AHMSI attempted to assign the mortgage to LaSalle Bank, or February 22, 2013, when LaSalle Bank attempted to assign the mortgage to Plaintiff as Trustee. Am. Compl. ¶ 77, ECF No. 26. Plaintiff has presented no evidence that it was the holder of the note on any of these dates. "Because U.S. Bank fails to cite authority in support of its position and provides no explanation for its request, the [C]ourt sees no reason . . . to allow the . . . equitable assignment nunc pro tunc." U.S. Bank Tr. N.A. v. Bedard, No. 18-cv-30033-MGM, 2018 WL 6682836 at *2 n.2 (D. Mass. Dec. 4, 2018), adopted 2018 WL 6682769 (D. Mass. Dec. 19, 2018).

[6] Although Plaintiff does not ask the Court to find that it is the holder of the mortgage on the basis of title, Plaintiff nonetheless presented numerous exhibits at trial, including assignment agreements (PXG and PXH), trust documents (PXI and PXM), and a loan schedule (PXK) in an attempt to demonstrate that it "is the current holder of the mortgage loan" by virtue of its position as trustee of the trust into which the mortgage has been deposited. Apr. 5 Tr. 4:6-10. In a claim for equitable assignment of a mortgage, a plaintiff need only prove that it is the holder of the note and entitled to enforce it; if a plaintiff is able to prove that it is the holder of the mortgage, there is no need for an equitable assignment. See discussion infra.

Even if these exhibits were relevant, they are not helpful to Plaintiff's case. Although the assignment agreements evidence assignments between various entities that purportedly held the mortgage, the exhibits do not show that the original mortgagee, Option One, ever assigned the mortgage to any other entity. "Thus, based on the documents submitted . . . Option One, not U.S. Bank, [is] the mortgage holder." U.S. Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40, 52 (Mass. 2011) (concluding that because of gap in chain of assignments, plaintiff failed to establish that it held mortgage).

Defendant filed two Motions in Limine challenging the admission of these exhibits on the grounds of voidness of the

assignment of the mortgage underlying the note, the assignment of the note does not carry with it the assignment of the mortgage." U.S. Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40, 54 (Mass. 2011).[7] Instead, the holder of a promissory note has an equitable right to obtain the assignment of the mortgage under the doctrine of equitable assignment.[8]   Id. at 54; see also Culhane v. Aurora Loan

---

assignments, Def.'s Mot. Lim. & Mot. Default J. 7-10, ECF No. 57, lack of authentication, Def.'s Mot. Lim. 2-6, ECF No. 58, and hearsay, id. at 6, and he renewed these objections at trial. Apr. 18 Tr. 68:5-18, 77:18-19. Because the exhibits are ultimately irrelevant to the outcome of this case, Defendant's Motions in Limine, ECF Nos. 57 and 58, insofar as they concern Exhibits G, H, I, K, and M, are DENIED as MOOT.

Plaintiff also introduced evidence concerning Defendant's three bankruptcy petitions, asserting that because he listed LaSalle Bank and Ocwen Mortgage Company as creditors, this evidence "demonstrate[s] that Mr. Shakoori himself . . . has acknowledged and admitted" that these entities were the holder or servicer of the mortgage when the petitions were filed.  Apr. 5 Tr. 8:13-9:5. Because the holder of the mortgage is irrelevant in a claim for equitable assignment, this evidence is similarly unhelpful.

[7] The Rhode Island Supreme Court has cited to and relied upon the Massachusetts Supreme Judicial Court's ("SJC") decision in Ibanez specifically, see, e.g., Pimental v. Deutsche Bank National Trust Co., 174 A.3d 740, 744 (R.I. 2017), and on SJC cases more broadly concerning mortgage and foreclosure disputes, see Woel v. Christiana Trust, 228 A.3d 339, 346-47 (R.I. 2020) (relying on Pinti v. Emigrant Mortgage Co., 33 N.E.3d 1213 (Mass. 2015), as "instructive" on foreclosure issue); Bucci v. Lehman Bros. Bank, FSB, 68 A.3d 1069, 1085 (R.I. 2013) (relying on Eaton v. Fed. National Mortgage Ass'n, 969 N.E.2d 1118 (Mass. 2012), regarding right to foreclose).  Following that practice, the Court likewise relies on Ibanez for guidance on equitable assignment.

[8] If the holder of the note does not obtain an equitable assignment of the mortgage from a court (or a valid written assignment), the "the mortgage holder remains unchanged" and the

_Servs. of Neb._, 708 F.3d 282, 292 (1st Cir. 2013) (when mortgage and note are held by separate entities, "[t]he noteholder possesses an equitable right to demand and obtain an assignment of the mortgage.  This makes perfect sense:  if the debtor-mortgagor defaults, the noteholder needs to control the mortgage in order to enforce its bargained-for security interest and collect the debt." (internal citation omitted)).  The party seeking equitable assignment of the mortgage must file an action in court for an equitable order of assignment.  _Ibanez_, 941 N.E.2d at 53.  The party must also be entitled to enforce the note under the Uniform Commercial Code.  _See_ R.I. Gen. Laws § 6A-3-301 (2000).  To demonstrate such an entitlement, the party must prove that they are either (i) the holder of the note, (ii) a non-holder of the note but nonetheless in possession, or (iii) a person or entity not in possession of the note but nonetheless entitled to enforce it.  _Id._  _See_ _Lister v. Bank of Am., N.A._, 8 F. Supp. 3d 74, 80 (D.R.I. 2014) ("[M]ere possession of the note may entitle that person to enforce the terms and conditions contained within the note" under § 6A-3-301.).

At trial, Plaintiff presented evidence demonstrating that it is the holder of the note.  Specifically, it presented the original

mortgagee "holds the mortgage in trust for the purchaser of the note."  _Ibanez_, 941 N.E.2d at 54.

note, which was authenticated by Defendant through his testimony that the document appeared to be the original note and that he recalled signing it. See PXC; Apr. 5 Tr. 39:17-19, 46:19-25. The allonge, which includes an indorsement in blank, was attached to the note, and the allonge was authenticated through Handville's testimony. See PXC; Apr. 18 Tr. 87:24-90:6. Handville also testified to the loan servicer's maintenance of promissory notes in "collateral files," the general process of transferring such files from the document custodian to the servicer and to counsel, and the specific transfer of the original note that occurred in this case to Plaintiff's counsel. Apr. 18 Tr. 90:7-93:16. This evidence is sufficient to establish that Plaintiff is the holder of the note.

    2. Enforcement of Note

    Defendant claims, however, that even if Plaintiff is the holder of the note, the note is unenforceable due to a defective indorsement. An indorsement is "a signature . . . for the purpose of (i) negotiating the instrument, (ii) restricting payment of the instrument, or (iii) incurring indorser's liability on the instrument." R.I. Gen. Laws § 6A-3-204(a). If an indorsement does not identify a person to whom it makes the instrument payable, it is a "blank indorsement." R.I. Gen. Laws § 6A-3-205(b). "When indorsed in blank, an instrument becomes payable to bearer and may

be negotiated by transfer of possession alone." Id.  See Mruk v. Mortg. Elec. Reg. Sys., Inc., 82 A.3d 527, 530 n.3 (R.I. 2013). Therefore, the entity that holds a note that has been indorsed in blank has the right to enforce the note.

The signature need not be on the instrument itself for the indorsement to be effective.  Under Rhode Island law, "[f]or the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument."  R.I. Gen. Laws § 6A-3-204(a).  This affixed paper is known as an "allonge."  See Note Cap. Grp. V. Perretta, 207 A.3d 998, 1000 n.4 (R.I. 2019) (quoting Black's Law Dictionary 92 (10th ed. 2014)); see also supra at note 2.

Defendant asserts two arguments for the invalidity of the note:  first, that the allonge containing the indorsement in blank was not affixed to the note at the time of signing, see Apr. 5 Tr. 19:9-20:16, and second, that the indorsement occurred before the three-day right of rescission passed and is therefore void or voidable, see Apr. 5 Tr. 21:12-24:3.  Neither argument is availing.[9]

Relying on the definition of "allonge" provided by the Rhode

_____

[9] A third argument asserted by Defendant is that Mary Conway, whose signature appears on the allonge, was an employee of Option One in its Tampa, Florida office and was not in Rhode Island on the day that the note and allonge were purportedly signed.  See

10

Island Supreme Court in <u>Perretta</u>, Defendant asserts that the allonge must be affixed to the note before the signature is placed on the allonge. <u>See</u> Apr. 5 Tr. 20:2-5. The sole evidence presented at trial as to whether the allonge was affixed to the note, other than the note itself with the allonge attached, was Defendant's testimony. Defendant stated that he had never seen the allonge to the note, and that he did not see the allonge when he signed the note. Apr. 5 Tr. 46:10-18.

"The Court's independent research identifies no [Rhode Island] or [First] Circuit authority establishing the method of attachment necessary to create an effective [i]ndorsement" by allonge, <u>Livonia Prop. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC</u>, 717 F. Supp. 2d 724, 734 (E.D. Mich. 2010), and identifies no authority establishing when the allonge must be attached to the note to create an effective indorsement. Regardless, even if the allonge was not physically attached to the note at or soon after execution, courts faced with similar questions have held that so long as "information on [the] allonge indicates an intent to serve as an [i]ndorsement of the . . . note," the indorsement is effective. <u>Kohler v. U.S. Bank Nat. Ass'n</u>, No. 11-C-0893, 2013 WL 3179557 at *5 (E.D. Wis. June 21,

---

Apr. 5 Tr. 20:22-21:7. Defendant presented no evidence to support this argument, so the Court rejects it.

2013).  Where "the allonge[] presented to the Court w[as] attached
to the [n]ote" and where the allonge makes unambiguous reference
to the note, "given the clear intent that the [n]ote and [a]llonges
were to be physically attached, the evidence is insufficient to
invalidate the [i]ndorsement[]." Livonia Prop. Holdings, 717 F.
Supp. 2d at 734 (applying Michigan statute identical in relevant
part to R.I. Gen. Laws § 6A-3-204(a)).

Here, the allonge was attached to the original note that was
presented to the Court, and the allonge references the note by
listing the borrower's name, loan number, property address, loan
amount, note date, and servicing number. See PXC. Therefore, the
evidence presented by Plaintiff is sufficient to validate the
indorsement.[10]

Defendant also asserts that the note is void or voidable
because the indorsement occurred before the conclusion of the

---

[10] The legislative history of Rhode Island's statute supports
this conclusion.  The final sentence of R.I. Gen. Laws § 6A-3-
204(a), stating that "a paper affixed to the instrument is part of
the instrument," was added to the statute in 2000, see P.L. 2000,
ch. 238, § 3, and was "based on subsection (2) of former Section
3-202."  R.I. Gen. Laws § 6A-3-204(a), cmt. 1.   Prior to the
amendment, § 3-202 mandated that "[a]n indorsement must be written
. . . on the instrument or on a paper so firmly affixed thereto as
to become a part thereof." R.I. Gen. Laws § 6A-3-202 (1999). "The
change in language suggests an intent to expand, rather than
restrict, the use of allonges." Livonia Prop. Holdings, LLC v.
12840-12976 Farmington Rd. Holdings, LLC, 717 F. Supp. 2d 724, 734
n.10 (E.D. Mich. 2010).

three-day rescission period.  See Apr. 5 Tr. 21:12-24:9.  The Truth
in Lending Act, 15 U.S.C. § 1601 et seq., provides a right of
rescission for a consumer entering into "any consumer credit
transaction. . . in which a security interest . . . is or will be
retained or acquired in any property which is used as the principal
dwelling of" the consumer.  15 U.S.C. § 1635(a).  The consumer
"shall have the right to rescind the transaction until midnight of
the third business day following the consummation of the
transaction."  Id.  "When an obligor exercises his right to rescind
. . . any security interest given by the obligor . . . becomes
void."  Id. § 1635(b).  Defendant contends that because the
allonge, dated July 16, 2003, was executed on the same day as the
note, also dated July 16, 2003, the indorsement on the allonge
could not be effective because the loan was not funded until the
rescission period expired and, thus, there was no consideration
for the note.  See Apr. 5 Tr. 21:12-24:9.

Defendant's argument reflects a fundamental misunderstanding
of a right of rescission.  A right of rescission does not prevent
a contract from forming until the expiration of the rescission
period.  Rather, it gives a party to the contract the ability to
unmake the contract within the specified timeframe and return to
the status quo ante.  See In re Sheedy, 801 F.3d 12, 21 (1st Cir.
2015) (rescission "is the 'unmaking' or 'voidance' of a contract");

13

McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 421 (1st Cir. 2007) ("Rescission essentially restores the status quo ante; the creditor terminates its security interest and returns any monies paid by the debtor in exchange for the latter's return of all disbursed funds or property interests."). In addition, Defendant has presented no evidence to support his assertion that the loan was not funded until the expiration of the rescission period and that there was no consideration for the note on the day it was signed. Therefore, because the three-day right of rescission did not prevent the contract from being formed or the loan from being funded, it is not a basis on which to invalidate the indorsement.

### 3. Equitable Factors

The final inquiry as to whether Plaintiff is entitled to equitable assignment of the mortgage is balancing the equitable factors. The determination of whether to grant equitable relief rests within the discretion of the trial judge. Ruggieri v. City of East Providence, 593 A.2d 55, 57 (R.I. 1991). A trial judge's determination should be guided by "basic principles of equity and justice," should balance the equities by "weighing hardships to either side," and should only grant relief in the absence of an adequate legal remedy. Chavers v. Fleet Bank (RI), N.A., 844 A.2d

666, 679 (R.I. 2004).

    The decision to grant equitable assignment of the mortgage to Plaintiff does not result in unfair hardship to Defendant. Defendant has lived on the property without making payments on his mortgage for at least ten years. Apr. 5 Tr. 65:14-16.  The Court "echo[s] the First Circuit's language to describe the necessary outcome in this situation: 'the piper must be paid.'" Pimentel v. Deutsche Bank Nat'l Tr. Co., 174 A.3d 740, 745-46 (R.I. 2017) (quoting Summers v. Fin. Freedom Acquisition LLC, 807 F.3d 351, 353 (1st Cir. 2015)).  In addition, because Plaintiff is unable to demonstrate that it is the holder of the mortgage by chain of title, see supra at note 6, there is no adequate legal remedy. See Chavers, 844 A.2d at 679.  Therefore, because Plaintiff is the holder of the note, the indorsement on the note is effective, equitable assignment of the mortgage to Plaintiff will result in no unfairness to Defendant, and there is no adequate legal remedy, Plaintiff is entitled to equitable assignment of the mortgage.[11]

    B. Defendant's Motions in Limine

    The Court next addresses the remaining issues in Defendant's

---

    [11] Although the equitable assignment of the mortgage to Plaintiff will enable it to foreclose on the property, Defendant is not personally liable for the outstanding balance of the loan because his debt was discharged after his third bankruptcy petition.  See PXDD.

Motions in Limine.[12]   Defendant's first motion seeks to preclude Plaintiff from asserting certain arguments that contradict statements in Defendant's request for admissions; Defendant contends that these statements should be deemed admitted because Plaintiff failed to timely respond to the request for admissions. Def.'s Mot. Lim. & Mot. Default J. ("Def.'s First Mot. Lim.") 3, 10, ECF No. 57.   The motion also requests sanctions against Plaintiff for failing to timely respond and providing deficient answers to interrogatories.   Id. at 15-28.   Defendant's second motion seeks to preclude the admission of certain of Plaintiff's exhibits on the grounds of lack of authentication, hearsay, and inaccuracy.   Def.'s Mot. Lim. ("Def.'s Second Mot. Lim") 2, 6, ECF No. 58.[13]

    1. Request for Admissions

    Defendant asserts that his request for admissions were transmitted to Plaintiff's counsel on May 19, 2018, and that because the request was not responded to within the thirty days

---

[12] See supra at note 6 regarding the disposition of the other issues in Defendant's motions in limine.

[13] The motions challenge thirteen exhibits in total.  Six of these exhibits (exhibits J, L, EE, FF, GG, and HH) were not introduced by Plaintiff at trial.  Insofar as Defendant's motions challenge these exhibits, they are DENIED as MOOT.  In addition, while both motions list the note (PXC) as an exhibit that should be excluded, neither make an argument as to why.  Therefore, insofar as the motions concern this exhibit, they are DENIED.

allotted under Rule 36(a) of the Federal Rules of Civil Procedure,
all statements contained therein should be deemed admitted.  Def.'s
First Mot. Lim 3.  Plaintiff does not dispute that it failed to
timely respond to Defendant's request for admission but asserts
that any delay in the responses stemmed from a good faith and
extended effort to settle the case.  See Pl.'s Resp. Def.'s Mot.
Lim. ("Pl.'s First Resp.") 2, ECF No. 60.

"Under Federal Rule of Civil Procedure 36(a), after a party
serves a written request for admission, '[a] matter is admitted
unless, within 30 days after being served, the party to whom the
request is directed serves on the requesting party a written answer
or objection . . . .'"  Foss v. Marvic Inc., 994 F.3d 57, 63 (1st
Cir. 2021) (quoting Fed. R. Civ. P. 36(a)).  "A matter admitted
under [Rule 36] is conclusively established unless the court, on
motion, permits the admission to be withdrawn or amended."  Fed.
R. Civ. P. 36(b).  "District courts have considerable discretion
over whether to permit withdrawal or amendment of admissions made
pursuant to Rule 36."  Farr Man & Co. v. M/V Rozita, 903 F.2d 871,
876 (1st Cir. 1990).  Here, however, Plaintiff has not moved to
withdraw the admissions.  Therefore, insofar as Defendant's First
Motion in Limine requests that these statements be admitted, the
motion is GRANTED.

However, the statements have little effect on the case.  Of

the forty-five admitted statements, forty-one pertain to the
mortgage, assignments of the mortgage, and the trust in which the
mortgage is purportedly held.   Because the assignments of the
mortgage are irrelevant in a claim for equitable assignment, their
admission does not materially affect the outcome of this case.

The four remaining statements pertain to the note:

1. On December 15, 2008, Option One was not owed any
indebtedness under the Defendant's note.
2. On December 15, 2008, Option One did not own
Defendant's note.
. . .
25. On December 15, 2008 Sand Canyon did not own
Defendant's note.
. . .
29. La Salle Bank as Trustee never purchased Defendant's
note from Sand Canyon at any time.

Def.'s First Mot. Lim. 3-5.   However, these statements also do not
materially affect the outcome of this case.   In order to establish
ownership of the note, a party is not required to demonstrate the
chain of title to the note; it need only show that it holds the
note and is entitled to enforce it, which Plaintiff has done here
by presenting the original note that is indorsed in blank.   See
discussion supra.   Therefore, whether any of the entities mentioned
in these statements were owed debt on the note, owned the note, or
transferred the note at any point prior to Plaintiff's possession
of the note is inconsequential to Plaintiff's present ownership of

the note.

2. Discovery Sanctions

Defendant next asserts that sanctions in the form of dismissal or exclusion of evidence should be imposed against Plaintiff for its deficient discovery responses.  See Def.'s First Mot. Lim. 15-28.  Specifically, Defendant contends that Plaintiff failed to respond to Defendant's request for interrogatories for three years, id. at 13, and that when it did, the responses suffered from various deficiencies.[14]  In addition, Defendant contends that Plaintiff failed to provide him with documents concerning the securitization of the mortgage, id. at 18-20, 26-27, 29-31, and that he was not provided with documents regarding the custodian or travel of the note and allonge, id. at 32-33.

Because the evidence that Defendant requests be excluded due to Plaintiff's deficient discovery responses was either not admitted, see supra at note 13, or was ultimately irrelevant to the equitable assignment claim, see supra at note 6, the Court considers only Defendant's request for dismissal of Plaintiff's

---

[14] These deficiencies include failure to identify persons with whom the answerer consulted, Def.'s First Mot. Lim. 15, answers that are inconsistent with the Complaint, id. at 16, 26-27, answers that are inconsistent with Plaintiff's proposed findings of fact, id. at 17-18, 26-28, answers that constitute vouching for fraudulent and void assignments, id. at 17, and deliberate refusal to provide information, id. at 19.

claim.  Rule 37 of the Federal Rules of Civil Procedure provides a mechanism for parties to move to compel discovery responses and also provides for sanctions if a party does not comply with a discovery order issued by the court or fails to provide answers to interrogatories.  Fed. R. Civ. P. 37(a), (b), (c), (d).  These sanctions can include dismissal of the case.  See Fed. R. Civ. P. 37(b)(2)(A)(v), (c)(1)(C), (d)(3); Companion Health Servs., Inc. v. Kurtz, 675 F.3d 75, 84 (1st Cir. 2012).  "Dismissal . . . is a harsh sanction, which should be employed only when a plaintiff's misconduct has been extreme . . ."  Malot v. Dorado Beach Cottages Assocs., 478 F.3d 40, 44 (1st Cir. 2007) (citation omitted).  The First Circuit has "recognized a number of litigation behaviors that comprise 'extreme misconduct' warranting dismissal," in particular, "extremely protracted inaction (measured in years), disobedience of court orders, ignorance of warnings, [and] contumacious conduct."  Vazquez-Rijos v. Anhang, 654 F.3d 122, 127-28 (1st Cir. 2011) (quoting Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir. 1987)).

Plaintiff's conduct here does not constitute "extreme misconduct."  Although Defendant alleges that Plaintiff failed to respond to interrogatories for three years, see Def.'s First Mot. Lim. 13, this delay does not constitute "protracted inaction."  Rather, the delay is attributable to the parties' ongoing efforts

20

to settle the case.  In addition, Defendant has not demonstrated that Plaintiff disobeyed a court order, ignored warnings, or acted with disregard for authority.  See Vazquez-Rijos, 654 F.3d at 127-28 (failure to serve defendant for three years plus ignoring court orders and warnings warranted sanction of dismissal).  Therefore, dismissal is not an appropriate sanction in this case, and Defendant's motion, insofar as it requests dismissal, is DENIED.

       3. Remaining Challenge to Evidence

All but one of the evidentiary issues raised by Defendant have been rendered moot, either because the exhibits he challenges are irrelevant to the issue of equitable assignment, see supra at note 6, or because Plaintiff did not introduce the exhibits at trial, see supra at note 13.  The remaining exhibit challenged by Defendant is the Loan Payment History of Defendant's loan.  See PXR.  Defendant argues that the Loan Payment History should not be admitted because it is inaccurate; the document consists of information from four loan servicers of Defendant's loan, and at least one servicer has admitted in other proceedings that its electronic system of record is not accurate.  Def.'s Second Mot. Lim. 9–10.

Plaintiff's introduction of this exhibit and Handville's accompanying testimony served primarily to establish that Defendant's loan has been in default since 2011 based on a failure

to make monthly mortgage payments.  Apr. 18 Tr. 86:5-18.  However, regardless of whether the Loan Payment History is accurate, Defendant admitted as much in his own testimony, stating that he had not made a payment on his mortgage loan in at least ten years and acknowledging that payments are still owed until August 1, 2033, the final payment date listed on the note.  Apr. 5 Tr. 42:3-11, 65:14-16; PXC.  Therefore, even declining to consider the Loan Payment History, the evidence is sufficient to establish that Defendant is in default on the loan, and Defendant's Motion in Limine, ECF No. 58, is DENIED insofar as it concerns Exhibit R.

C. Attorney's' Fees

Finally, Plaintiff argues that it is entitled to an award of attorneys' fees under the terms of the mortgage.  Pl.'s Proposed Concl. Law ¶¶ 11-12, ECF No. 53.

Evaluating the clear and unambiguous terms of a contract is a question of law.  Under Rhode Island law, a contract term "is ambiguous when it is reasonably and clearly susceptible to more than one rational interpretation."  Woel, 228 A.3d at 345.  In evaluating whether the contract language is ambiguous, courts "give words their plain, ordinary, and usual meaning."  Id.

While Plaintiff is correct that the terms of the mortgage are unambiguous, it is incorrect about what the mortgage unambiguously says.  Plaintiff asserts that the sixth paragraph of the mortgage

entitles it to an award of attorneys' fees.[15]  See Pl.'s Proposed Concl. of L. 12.  The clause of paragraph six relevant to costs and fees is applicable to three scenarios.  First, it dictates that the borrower shall "appear in and defend any action or proceeding purporting to affect the property or any portion thereof

---

[15] The relevant clause of paragraph six provides, in full:

> Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights or powers of Lender with respect to this Security Instrument or the property.  All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof.  Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

PXD at ¶ 6.

23

or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights or powers of Lender[16] with respect to this Security Instrument or the property," at his own expense.  Although this case does concern "the rights or powers of Lender with respect to this Security Instrument or the property," this sentence only mandates that the borrower pay his own costs, not that he must also pay the lender's costs or attorneys' fees.  Second, the clause states that at the lender's option, all of the borrower's causes of action related to the property may be assigned to the lender, and the lender is entitled to pay its costs, including reasonable attorneys' fees, from the proceeds.  This case was not a cause of action by the borrower that was assigned to the lender, so this scenario is inapplicable.  Finally, the clause provides that the lender is entitled to "appear in and prosecute in its own name any action or proceeding to enforce any" of the borrower's causes of action, but this scenario makes no mention of an entitlement to attorneys' fees.  Therefore, Plaintiff is not entitled to an award of

---

[16] "Lender" as used in the mortgage also encompasses an assignee of the mortgage.  See PXD at ¶ 12 ("The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower . . . .").

attorneys' fees under the language of the mortgage.[17]

III. Conclusion

For the foregoing reasons, Plaintiff is entitled to equitable assignment of the mortgage.  Defendant's Motion in Limine and Motion for Default Judgment and Sanctions, ECF No. 57, is GRANTED IN PART and DENIED IN PART, and Defendant's Motion in Limine, ECF No. 58, is DENIED.  Finally, Plaintiff's request for attorneys' fees is DENIED.

IT IS SO ORDERED.

_William E. Smith_

William E. Smith
District Judge
Date:  November 16, 2022

---

[17] Plaintiff has not suggested, and the Court has not identified, any other provisions of the mortgage that would entitle it to an award of attorneys' fees.