# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| U.S. BANK N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF THE STRUCTURED ASSET SECURITIES CORPORATION, STRUCTURED ASSET INVESTMENT LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-BC11, <br><br> U.S. Bank, as Trustee, <br><br> v. <br><br> MASOUD SHAKOORI-NAMINY a/k/a MASOUD SHAKOORI, BRENDA SHAKOORI-NAMINY, WILMINGTON TRUST, NATIONAL ASSOCIATION, AS SUCCESSOR TRUSTEE TO CITIBANK, N.A. AS TRUSTEE FOR BEAR STEARNS SECOND LIEN TRUST 2007-SV1, MORTGAGE-BACKED CERTIFICATES, SERIES 2007-SV1, HERITAGE CONCRETE CORP., THE FIREPLACE LLC, STEPHEN E. MOTTAU and HALLINAN CAPITAL CORPORATION, <br><br> Defendants. | C.A. No. 17-CV-00394-WES-LDA |

### U.S. BANK, AS TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT OF THEIR OPPOSITION TO DEFENDANT MASOUD SHAKOORI'S MOTION FOR NEW TRIAL AND TO ALTER AND AMEND THE JUDGMENT

## I. INTRODUCTION

This Court has granted an equitable assignment of mortgage to U.S. Bank, as Trustee, U.S. Bank N.A., as Trustee for the Registered Holders of the Structured Asset Securities Corporation, Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2003-BC11 ("U.S. Bank, as Trustee") based on irrefutable evidence that Defendant, Masoud Shakoori-Naminy a/k/a Masoud Shakoori ("Shakoori") originated a loan with Option One Mortgage Corporation ("Option One") that U.S. Bank, as Trustee now owns. Shakoori seeks to amend the judgment or a new trial on grounds that this Court committed manifest error of law by claiming: (1) that the

Promissory Note's (the "Note") indorsement was not valid because there was no evidence that the allonge was affixed to the Note at the time it was executed; (2) that Howard Handville's ("Handville") testimony should not have been admitted under *U.S. Bank Trust v. Jones*; and (3) that U.S. Bank, as Trustee's admissions prohibited judgment. There is no legal or factual support for any of Shakoori's arguments.

First, no statute or decision, in Rhode Island or outside this jurisdiction, requires execution of an allonge at the time it is affixed to a promissory note in order to effect a valid indorsement. In fact, all statutes and decisions Shakoori cites for his signature theory actually support U.S. Bank, as Trustee's enforceable possession of the Note. Second, Handville's detailed testimony on PHH Mortgage Corporation's ("PHH") processes to integrate a prior servicers records, and the steps he took to verify all documents submitted as exhibits at trial of this case, demonstrate compliance with *Jones*, Handville's qualification as a witness and the admissibility of all records. Third, this Court's admission of all facts from Shakoori's requests to admit did not and should not alter the Court's decision to grant an equitable assignment. U.S. Bank, as Trustee did not pursue relief based on any assignment recorded in the subject property's chain of title, but instead presented evidence of the loan's origination and transfer through trust documents and of possession of the promissory note. Moreover, Shakoor's own testimony verified the Note, the travel of his loan between servicers and lenders that U.S. Bank, as Trustee proved up, and that he has not made a single payment in more than ten years. The Court committed no manifest error of law in concluding that the equities weigh in favor of granting U.S. Bank, as Trustee's request for equitable assignment. Accordingly, the Court should deny Shakoori's Motion.

1019463\312429047.v1

## II. STANDARD OF REVIEW

Following a nonjury trial, a motion for a new trial may only be granted for reasons that would allow rehearing in a federal court equitable a suit. *See* Fed. R. Civ. P. 59(a)(1)(B). These reasons must be substantial; judgment will not be set aside unless there has been a manifest error of law or mistake of fact. *Jackson v. United States*, No. 08-40024-FD, 2011 U.S. Dist. LEXIS 145003, *8, (D. Mass. Dec. 15, 2011) (quoting *Ball v. Interoceanica Corp.*, 71 F.3d 73, 76 (2d Cir. 1995)); *see also In re Brooks*, No. 07-41941-MSH, 2010 Bankr. LEXIS 2498, *4 (B.A.P. 1st Cir. 2012)). Likewise, under Fed. R. Civ. P. 59(e), a party may only move to alter or amend judgment entered after trial "where the movant shows a manifest error of law or newly discovered evidence." *Prescott v. Higgins,* 538 F.3d 32, 45 (1st Cir. 2008) (quoting *Kansky v. Coca-Cola Bottling Co. of New England,* 492 F.3d 54, 60 (1st Cir. 2007)). The First Circuit has noted that prevailing on a rule 59(e) motion is very difficult. *Marie v. Allied Home Mortgage Corp.,* 402 F.3d 1, 7 n.2. (1st Cir. 2005). A court may properly deny a Rule 59(e) motion if the arguments in the motion rely on evidence that could have been discovered earlier through the exercise of due diligence, are repeat arguments that were made prior and properly rejected, could have and shown have been raised before judgment issued. *Yeomalakis v. FDIC,* 562 F.3d 56, 61 (1st Cir. 2009).

## III. LEGAL ARGUMENT

In the first place, Shakoori presents arguments and evidence that simply rehash prior legal positions Shakoori pressed throughout the course of this trial, in pretrial filings and in post-trial briefs submitted before the Court granted the equitable assignment. Shakoori also has not presented any new evidence in his motion. No relief under Rule 59(e) is available because the arguments and evidence Shakoori utilizes to request an alteration of judgment rely on evidence that was already presented to the Court and repeat arguments Shakooir made through out the case,

1019463\312429047.v1

before, during and following trial. If, however, this Court is willing to proceed despite the fact that no new argument or evidence is presented, no manifest error of law has occurred in this case.

A) *The Court Committed No Manifest Error of Law in Finding a Valid Note & Indorsement*

Shakoori's claim of manifest error of law falsely challenges the Note by arguing that U.S. Bank, as Trustee did not present evidence that the allonge was affixed to the Note at the time it was executed. (Shakoori's Memorandum of Law in Support of Motion to Amend ("Shakoori Memorandum"), ECF No. 90-1 at pp. 1-10.). No Rhode Island statute, no decision in this jurisdiction, and no case from any other jurisdiction supports Shakoori's position that an allonge must be attached to a promissory note at the time the allonge is executed.

Shakoori constructs an incorrect interpretation of Rhode Island law by arguing that the state's Uniform Commercial Code ("UCC") defines "indorsement" to require that a party affix the allonge to a promissory note when the signature is made. While the UCC defines "Indorsement" as a signature and allows for an indorsement by allonge ("a paper affixed to the instrument is part of the instrument"), no part of the definition includes any requirement or even reference to affixing an allonge at the time of signature. *See* § R.I.G.L. 6A-3-2-204. Nevertheless, Shakoori argues that inclusion of the word "signature" in the definition of an indorsement allows him to demand date and time of the signature on an allonge for U.S. Bank, as Trustee to prove possession of the Note in this case. U.S. Bank, as Trustee has demonstrated compliance with Rhode Island's Uniform Commercial Code by submitting evidence, and presenting to the Court for review, the original Note with an endorsement in blank by allonge that is permanently affixed to the agreement.

Shakoori attempts to rely on several decisions from the Rhode Island Supreme Court, *Note Capital Grp., Inc. v. Perretta*, 207 A.3d 998, 1005, 1006-07 (R.I. 2019), *Pimentel v. Deutsche Bank Nat'l Trust Co.*, 174 A.3d 740, 745 (R.I. 2017), and *Moura v. Mortgage Elec. Registration*

4

*Sys.*, 90 A.3d 852, 858 (R.I. 2014), to argue that this Court disregarded the UCC in deciding that an allonge did not have to be affixed to the note at the time it was signed. (Shakoori Memorandum, ECF No. 90-1 at pp. 4-5.) These decisions do not support Shakoori's claim. In *Perretta*, the Rhode Island Supreme Court concluded that Note Capital Group could not foreclosure because there was insufficient proof to establish possession of a lost note under UCC 3-309. 207 A.3d at 1005, 1006-07. In *Pimentel*, the Court affirmed summary judgment in favor of the foreclosing bank despite the fact that the borrower submitted copies of unendorsed notes because the bank "provided a copy of the note with an allonge that demonstrate[d] that the note was endorsed, along with an affidavit attesting that it [held] the note.". 174 A.3d at 746. Finally, in *Moura*, while the borrower challenged the validity of the travel of the promissory note through "a disorganized mélange of conclusory statements that purportedly undergird a claim of genuine issue of material fact," the Court affirmed summary judgment in favor of the bank. 90 A.3d at 858. "The evidence and supporting documents, including the Asher Affidavit, establish that Michael Moura signed the note, that the note was signed in favor of Accredited Home Lenders, which endorsed an allonge in blank, and that it was subsequently held by Vericrest Financial on behalf of Deutsche Bank." *Id.*

In this case, there is no dispute Shakoori signed a promissory note in favor of Option One Mortgage Corp., that the Note is endorsed in blank by allonge, and that U.S. Bank, as Trustee currently holds the Note with a permanently affixed allonge. No part of the original note is missing. While *Perretta*, *Pimental* and *Moura* provide no support of Shakoori's demand of the actual date the allonge was executed, these same decisions demonstrate that U.S. Bank, as Trustee is entitled to judgment on their claim for equitable assignment of mortgage because the evidence demonstrates a valid endorsement and present possession of the Note.

Shakoori also attempts to rely on several decisions outside of Rhode Island to argue the timing of a signature on an allonge determines whether negotiation of the promissory note occurred in compliance with the UCC. Once again, no decision Shakrooi cites supports this argument. In *In re Shapoval*, 441 B.R. 392, 393 (B.K. Ma. 2010), the Massachusetts bankruptcy court denied a motion for relief from stay in favor of an evidentiary hearing, because the bank filed a proof of claim that did not include a note endorsed by allonge, and then filed a response to the borrower's objection to the proof of claim with an allonge. *Shapoval* raised the question of whether the allonge was permanently affixed under the UCC. The same challenge over whether an allonge was permanently affixed to the promissory note arose in *Thomas v. CitiMortgage, Inc.* (*In Re Thomas*), 447 B.R. 402, 411 (Bankr. D. Mass. 2011) and in *Adams v. Madison Realty & Dev., Inc.*, 853 F.2d 163, 166-67 (3rd Cir. 1988). In *Boguslav v. Blb Trading, LLC*, 136 F. Supp. 3d 11, 15 (D. Mass. 2015), the Massachusetts federal court dismissed a borrower's challenge to the types of endorsement that appeared on a promissory note a bank sought to enforce. The court concluded that "[r]egardless of intent of the signer, a signature is an indorsement unless accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than indorsement and when a bank holds a blankly indorsed Note, the blankly indorsed instrument is payable to the bearer." *Id.*

Here, Shakoori is attempting to employ decisions that review whether an allonge is permanently affixed to the Note to argue that the timing of a signature on the allonge is critical to enforcement. The cases Shakoori discusses do not include or discuss any such holding or theory and instead focus on whether the allonge is permanently affixed to the note. There is no dispute here that the allonge is permanent affixed to the Note, and any one of the decisions Shakoori cites supports judgment in in favor of U.S. Bank, as Trustee.

This Court correctly points out that no Rhode Island or First Circuit decision establishes the timing and means of signature necessary to create an effective endorsement by allonge, which is precisely why Shakoori's argument must be rejected and motion denied. The Court did not commit any error by review and discussion of *Livonia Prop. Holdings, L.L.C. v. 12840-12976 Farmington Rd. Holdings, L.L.C.*, 717 F. Supp. 2d 724, 734 (E.D. Mich. 2010), and *Kohler v. United States Bank Nat'l Ass'n*, No. 11-C-0893, 2013 U.S. Dist. LEXIS 87565, at *15-*16 (E.D. Wis. June 21, 2013). Both decisions stand for the legal principle that so long as the information on an allonge indicates an intent to serve as indorsement of the note, the allonge is effective. *Livoinia Prop. Holdings*, 717 F.Supp.2d at 734, *Kohler*, 2013 U.S. Dist. LEXIS 87565, at *15. Shakoori attempts to distinguish these cases on facts (in *Livonia* the assignment and in *Kohler* a bank witnesses' testimony as to custody of bank files) while ignoring the basic principle of intent to negotiate as determinative of the endorsement's enforceability. Review of the allonge affixed to the Note evidences a clear and unambiguous intent to negotiate the agreement by an endorsement in blank so that the party who possesses the original note with allonge, namely U.S. Bank, as Trustee, has the authority to enforce collection under Rhode Island's Uniform Commercial Code and is entitled to an equitable assignment of mortgage.

B) *The Court Did Not Commit a Manifest Error of Law by Admitting Evidence to Grant U.S. Bank, as Trustee's Equitable Assignment*

Shakoori challenges the admission of Howard Handville's testimony, and authentication of records under *U.S. Bank Trust v. Jones*, 925 F.3d 534 (1st Cir. 2019), by arguing that Handville did not verify the boarding or verification of business records. (Shakoori Memorandum, ECF No. 88 at p. 9.) A complete review of Handville's testimony rejects Shakoori's challenge under *Jones*. Federal Rule of Evidence 803(6) excludes from hearsay records kept in the course of regularly conducted business activity. *Jones* dictates that business records "containing third-party entries

7

without third-party testimony" may be admitted if "the entries 'were intimately integrated' into the business records." 925 F.3d 534 (quoting *FTC v. Direct Marketing Concepts, Inc.*, 624 F.3d 1, 16 n.15 (1st Cir. 2010)). Likewise, business records may also be admitted when the party introducing them relied on a "third-party 'document and documents such as those[] in the business.'" *Id.* (quoting *United States v. Doe*, 960 F.2d 221, 223 (1st Cir. 1992)).

In *Jones*, the First Circuit affirmed admission of business records in a judicial foreclosure that the foreclosing lender's loan servicer acquired following a transfer from a prior servicer. The First Circuit emphasized the following facts elicited through the testimony of the loan servicer's witness: the servicer "incorporated the previous servicer's records into its own database[,]" and the servicer's "acquisition department took steps to review the [prior] servicer's records in a way that assured itself of the accuracy of records." *Jones*, 925 F.3d. at 538 (quoting *Wallace Motor Sales, Inc. v. American Motor Sales Corp.*, 780 F.2d 1049, 1061 (1st Cir. 1985)). In this case, Handville testified that the boarding process through which PHH obtained a prior servicer's records involved several phases. (April 18 Trial Transcript ("April 18 Tr."), p. 9:12-19.) Handville described in detail the process through which a prior servicer's records were transferred to PHH and verified, including steps such as the prior servicer sending a report with the borrower's loan information prior to and after the transfer, running the loan information through a series of spreadsheets to have the most up-to date information, running a test on the loan once its brought into the new servicing system, and conducting a series of audits. (*Id.* at pp. 9:12-12:9; 12:21-13:22; 14:9-15:4; 29:10-30:25.)

Handville further explained how Ocwen Loan Servicing ("Ocwen") received the documents particular to Shakoori's loan from Homeward Residential: that Ocwen received a CD with the loan information on it and the documents were imported into a SharePoint database, an

1019463\312429047.v1

intranet site where employees can access trust acquisition documents. (April 18 Tr. at p. 16:9-17:24.) Handville familiarized himself with Shakoori's loan file by reviewing business records, including "origination documents, the HUD-1, the closing settlement statements, collateral file documents such as the note [and] mortgage," and he confirmed that it is a normal and customary practice of PHH to maintain records he reviewed in preparation for trial. (*Id*. at p. 20:10-22.) He testified that there were programs in place, such as "iDesk" and "CIS" to transfer documents from the prior servicer and to review documents from the prior and current servicer, and "Black Night MSP" to review investor information. He also testified that he had reviewed Homeward's servicing records for other mortgage loans that originated with Option One Mortgage Corporation. (*Id*. at pp. 17:25-18:19.) The sum and substance of Handville's testimony verified and demonstrated the integration of business records into those maintained by the current servicer, and illuminated the steps Handville undertook to verify and understand all of the records related to Shakoori's loan as part of his trial testimony.

      Shakoori claims that Handville could not explain how the records of Ocwen were confirmed and verified through the merger with PHH. (Shakoori Memorandum, ECF No. 90-1 at pp. 10-11.) The record of Handville's testimony contradicts this claim. Handville specifically testified that when Ocwen and PHH merged, the servicing records that Ocwen maintained and all of the data transferred from the "REAL servicing mortgage platform" to "Black Knight LoanSphere MSP" using the same type of boarding process that Ocwen used to obtain Homeward's records. (April 18. Tr. Pp. 19:2-18; 31:1-38:17.) He discussed the systems and processes used to integrate and review the loan records. (*Id*. at pp. 31:1-38:17.) Handville described how Ocwen maintained loan documents in an image database called "CIS[,]" and after the merger with PHH, the documents were imported into a new document repository, called

9

"iDesk." (*Id*. pp. 19:19-20:5.) Handville provided detailed testimony regarding how Ocwen and PHH maintained its records, how Ocwen verified the accuracy of the records it got from Homeward, and how PHH verified the accuracy of its records when PHH and Ocwen merged. This testimony demonstrated that Handville was a witness sufficiently qualified to authenticate and discuss business records.

Contrary to Shakoori's claim that the mortgage loan has been serviced by five entities (ECF No. 90-1 at p. 11), there has only been one service transfer. Option One sold its mortgage servicing rights to American Home Mortgage Servicing, Inc. ("AHMSI"). (April 18. Tr., pp. 77:24-78:25.) AHMSI then changed its name to Homeward Residential ("Homeward"), but was still the same entity. (*Id.* at pp. 8:22-25; 9:3-22.) Ocwen then acquired Homeward (*Id.* at p. 8:7-16), and PHH Mortgage merged with Ocwen Loan Servicing, LLC, in 2019. (*Id.* at p. 6:2-10.) With only one service transfer, from Option One to AHMSI, Shakoori has little to no ground to even compare this case with *Jones* or somehow complain about the integration of business records with or without Handville's complete testimony.

Shakoori erroneously argues that Handville violated the Best Evidence Rule, because he only looked at copies of documents, and did not know the location of the original documents so that he could not authenticate sales agreements, loan schedules, or any trust agreement. Once again, the record of this case contradicts this claim. *Jones* explains that Federal Rule of Evidence 1002 requires an original writing, unless otherwise provided by federal rules or statute. Federal Rule of Evidence 1001(d) allows for a printout to constitute an original document for electronically stored information, as long as the printout accurately reflects the information. 925 F.3d at 540. The First Circuit in *Jones* affirmed the district court's finding that the exhibit the loan servicer sought to introduce satisfied the federal rules because the witness testified that she personally reviewed the

10

records, found that they were accurate, and specifically attested that the exhibit was "an account summary and payment history" printed from the loan servicer's record. *Id*. In other words, the "printout" accurately reflected a date in the servicer's database and was an "original writing" under Rules 1001(d) and 1002. *Id*.

Here, Handville's testimony demonstrated that loan and trust documents were printed from electronic records PHH maintained on one of their intranet sites, and this testimony satisfied Rules 1001(d) and 1002 in the need for providing "original documents." Handville testified that PHH maintains systems in place to search for documents, i.e., the "Share Point website" that show the investor's acquisition of the loans that Ocwen services, which consists of documents such as the pooling and servicing agreement, acquisition-related documents regarding the placement of the loans, the mortgage loan schedule (April 18. Tr., pp. 38:18-42:4.) Handville explained that in his role as loan analyst it was the normal practice to review deal documents on the Sharepoint website, it was the customary practice of PHH to maintain the "deal documents" on the Sharepoint website, and that the exhibits presented at trial were true and accurate copies of the documents he reviewed. (*Id*. at pp. 43:5-45:4.) Handville described each "deal document" in detail and was able to authenticate each document as a true and accurate copy of the documents within the "Sharepoint" system and establish that U.S. Bank, National Association was the trustee for Shakoori's loan. (*Id*. at pp. 41:22-82:3.)

Particular to the promissory note at issue in this case, Handville provided testimony and evidence to authenticate the Note by reviewing both the original collateral file containing the Note and allonge and bailee letters that PHH and its counsel have used to acknowledge transfer of the Note from one entity or person to another. (Apr. 18 Tr. 86:19-95:14.) Handville was able to identify that the original Note, with the allonge endorsed in blank attached, and testified regarding the

Note's integration into the business records. Finally, Shakoori's claim that U.S. Bank, as Trustee could not authenticate the Note contradicts evidence Shakoori himself provided when he testified as to the contents of the Note, that his initials were on the bottom of the pages, and that his signature was on the Note. (April 5 Transcript ("Apr. 5 Tr."), pp. 38:5-39:9.) There is no dispute that Shakoori verified the Note through his own testimony. Under *Jones*, the original Note was correctly admitted by the Court as evidence in this matter.

### C) *The Court Did Not Commit a Manifest Error of Law by Refusing to Accept the Deemed Admissions as Dispositive of this Case.*

Shakoori's argument that this Court committed manifest error of law by not accepting as admitted the facts in the requests for admissions lacks merit. (Shakoori Memorandum, ECF No. 90-1 at pp. 21-28.) In the first place, the Court granted Shakoori's motion in limine and admitted all facts in the request for admissions. The Court's decision, however, demonstrates that the admitted facts had little effect, if any, on this case because the facts addressed the assignments of mortgage recorded in title. By contrast, U.S. Bank, as Trustee's case pursued an equitable assignment of mortgage notwithstanding the assignments of record and without any adequate remedy at law. *United States Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 652 (2011). U.S. Bank, as Trustee seeks an equitable assignment in part on their ability and authority to enforce a promissory note Shakoori admits he signed and that without dispute was endorsed in blank and in the possession of U.S. Bank, as Trustee. R.I. Gen. Laws § 6A-3-301 (2000); *Bucci v. Lehman Bros. Bank*, 68 A.3d 1069, 1088 (R.I. 2013). Handville and Shakoori's testimony and presentation of the original Note with allonge for review, satisfied the requirement that U.S. Bank, as Trustee possess the original note, endorsed in blank in order to enforce the terms of the mortgage loan.

Handville's testimony also demonstrates that U.S. Bank, as Trustee was the current trustee for the loan through a review of the pooling and servicing agreement, trust agreement, and loan

12

schedule. (Apr. 18. Tr. 50:20-83:16.) Handville described in detail the transfer of the loan from originator to trust including: (1) the depositor, Structured Asset Securities, purchased the loans from Lehman brothers, who then placed the loans into the trust; (2) the original trustee was LaSalle Bank National Association; (3) and the name of the trust is Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2003-BC11. (*Id.*) Handville also was able to identify Shakoori's mortgage loan in the loan schedule, demonstrating that Shakoori's loan was part of the trust. (*Id.* at 80:14-82:3.) He confirmed that the Trustee for the trust changed from LaSalle Bank to the current trustee, U.S. Bank, National Association. (*Id.*)

Shakoori's own testimony confirmed Handville's testimony and authentication of transaction documents. Shakoori testified that he signed a loan modification agreement with American Home Mortgage Servicing, and agreed that in 2008, AHMSI was his loan servicer. (*See* Apr. 5. Tr. 53:24-60:4.) Shakoori also confirmed that in his 2012 bankruptcy petition, LaSalle Bank, N.A. was listed under creditor as the mortgage holder and American Home Mortgage Servicing Inc. was the servicer of his mortgage loan. (*See* Apr. 5. Tr. 68:7-80:5.) In his testimony on the 2015 bankruptcy petition, Shakoori admitted that Ocwen was his mortgage loan servicer at that time. (*Id.* at 92:20-110:17.) Shakoori also admitted during trial that he had not made a mortgage payment in over ten years. (*See* Apr. 5. Tr. 66:14-67:4.) The facts admitted in response to Shakoori's Requests for Admission were not dispositive of this case because substantial evidence, from both Handville and Shakoori, demonstrates that U.S. Bank, as Trustee was the holder of the Note endorsed in blank and owner of a loan that Shakoori obtained from Option One, that Shakoori was no longer personally liable on the loan following a bankruptcy discharge, and that Shakoori had not made a single monthly payment in more than ten years while living at the

13

subject property for free. The equities weighed in favor of this Court granting U.S. Bank, as Trustee an equitable assignment of mortgage.

*D) The Court Did Not Commit a Manifest Error of Law
by Not Imposing Sanctions on U.S. Bank, as Trustee*

Contrary to Shakoori's argument, this Court did not commit any manifest error of law by not imposing sanctions on U.S. Bank, as Trustee. (Shakooir Memorandum ECF No. 90-1 at pp. 28-30). The Court correctly concluded that there was no evidence that U.S. Bank, as Trustee disobeyed a court order, ignored any warnings, or acted with disregard for authority in responding to discovery requests in this case. The record of this case also reflects that Shakoori sought no relief, not even a motion to compel, at any time until Shakoori demanded dismissal of suit, one of the harshest of all sanctions under Rule 37. Moreover, the docket reflects that Shakoori waited until two days prior to the first day of trial (April 3, 2022) to submit Proposed Findings of Fact that included documents he had not provided or produced through discovery at any time. (Proposed Findings of Fact, ECF No. 68.) U.S. Bank, as Trustee did not disobey any court orders, ignore warnings, or act with disregard for authority. Any delay in answering interrogatorie resulted from the parties' ongoing efforts to settle the case, and the resulting delays did not prejudice Shakoori's defense of the case.

## IV. CONCLUSION

Based on the foregoing, U.S. Bank, as Trustee, U.S. Bank N.A., as Trustee for the Registered Holders of the Structured Asset Securities Corporation, Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2003-BC11 respectfully requests that the Court deny Defendant, Masoud Shakoori-Naminy a/k/a Masoud Shakoori's Motion for a New Trial and to Alter and Amend the Judgment.

1019463\312429047.v1

Respectfully submitted,

U.S. BANK N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF THE STRUCTURED ASSET SECURITIES CORPORATION, STRUCTURED ASSET INVESTMENT LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-BC11

By: Its Attorney

/s/ *Samuel C. Bodurtha*
Samuel C. Bodurtha, Bar No. 7075
Jessica M. Goldberg, Bar No. 10531
HINSHAW & CULBERTSON LLP
56 Exchange Terrace, 5th Floor
Providence, RI  02903
Tel: 401-751-0842/Fax: 401-751-0072
Email:  sbodurtha@hinshawlaw.com
            jessicagoldberg@hinshawlaw.com

Dated:    January 27, 2023

## CERTIFICATE OF SERVICE

I, Samuel C. Bodurtha, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 27, 2023.

/s/ *Samuel C. Bodurtha*
Samuel C. Bodurtha

1019463\312429047.v1