UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                 )
U.S. BANK N.A., as Trustee for the )
Registered Holders of the        )
Structured Asset Securities      )
Corporation, Structured Asset    )
Investment Loan Trust,           )
Mortgage Pass-Through            )
Certificates, Series 2003-BC11,  )
                                 )
          Plaintiff,             )
                                 )
     v.                          )     C.A. No. 17-394 WES
                                 )
MASOUD SHAKOORI-NAMINY a/k/a     )
MASOUD SHAKOORI, BRENDA          )
SHAKOORI-NAMINY, and SAND CANYON )
CORPORATION,                     )
                                 )
          Defendants.            )
_____)
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, District Judge.

Before the Court are two motions to alter judgment and for new trial, one filed by Defendant Masoud Shakoori-Naminy ("Shakoori"), ECF No. 90, and the other by Defendant Brenda Shakoori-Naminy ("Brenda"), ECF No. 102, both challenging the Court's ruling that Plaintiff U.S. Bank N.A. is entitled to equitable assignment of Defendants' mortgage.  See Findings of Fact & Concl. of L., ECF No. 88.  For the reasons that follow, Defendants' motions are DENIED.

I.   Standard of Review

Following a nonjury trial, a motion for new trial may be granted "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court."   Fed. R. Civ. P. 59(a)(1)(B).   The reason must be substantial; judgment will not be set aside unless there has been a manifest error of law or mistake of fact.   Jackson v. United States, No. 08-40024-FDS, 2011 WL 6301425, at *3 (D. Mass. Dec. 15, 2011) (quoting Ball v. Interoceanica Corp., 71 F.3d 73, 76 (2d Cir. 1995)).

Similarly, a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e) may be granted "only where the movant shows a manifest error of law or newly discovered evidence." Prescott v. Higgins, 538 F.3d 32, 45 (1st Cir. 2008) (quoting Kansky v. Coca-Cola Bottling Co. of New Eng., 492 F.3d 54, 60 (1st Cir. 2007)).   A court may properly deny a Rule 59(e) motion if the arguments asserted rely on evidence that could have been discovered earlier through the exercise of due diligence, are repeat arguments that were properly rejected, or could and should have been raised before judgment issued.   See Yeomalakis v. FDIC, 562 F.3d 56, 61 (1st Cir. 2009).

II.  Discussion[1]

     A. Shakoori's Motion for New Trial

Shakoori seeks to amend the judgment or a new trial on the grounds that the Court committed three manifest errors of law: (1) that the indorsement of the promissory note ("note") was invalid because there was no evidence that the allonge was affixed to the note at the time it was executed, (2) that the testimony of Howard Handville, a senior loan analyst at Ocwen Financial Corporation ("Ocwen"), should not have been admitted under U.S. Bank Trust v. Jones, and (3) that Plaintiff's admissions precluded judgment.  Def.'s Mem. Supp. Mot. New Trial & Alter & Amend J. ("Shakoori's Mem.") 2, 11, 21, ECF No. 90-1.

     1. Indorsement

Shakoori first argues that Plaintiff failed to present evidence that the allonge was affixed to the note at the time it was executed and thus the indorsement of the note was invalid. Shakoori's Mem. 1-10.  No statute or case supports Shakoori's position that an allonge must be attached to a promissory note at the time the allonge is executed.

First, Shakoori points to Rhode Island's Uniform Commercial Code, which, in defining "indorsement," states that "a paper

---

[1] For a detailed recitation of the facts of the case, see Findings of Fact & Concl. of L., ECF No. 88.

3

affixed to the instrument is a part of the instrument." Shakoori's Mem. 2 (quoting R.I. Gen. Laws § 6A-3-204). No part of this definition contains any requirement that the allonge be affixed to the note at the time of signature.

Shakoori next points to three Rhode Island Supreme Court ("RISC") cases, each of which defines "allonge." Shakoori's Mem. 4-5. In Note Capital Group, Inc. v. Perretta, 207 A.3d 998, 1000 n.4 (R.I. 2019), Pimentel v. Deutsche Bank National Trust Co., 174 A.3d 740, 742 n.4 (R.I. 2017), and Moura v. Mortgage Electric Registration Systems, 90 A.3d 852, 853 n.1 (R.I. 2014), the RISC referred to the definition of "allonge" from Black's Law Dictionary, which states that an allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." Black's Law Dictionary 92 (10th ed. 2014). Like the Rhode Island statute, these cases make no mention of when the allonge must be affixed to the note. In addition, the attachment of the allonge to the note was not at issue in these three cases,[2] and the RISC did not engage in any discussion on this

---

[2] In Note Capital Group, the Rhode Island Supreme Court concluded that the plaintiff could not foreclose on the defendant's property because there was insufficient proof to establish possession of the lost note. 207 A.3d at 1006. In Pimentel, the court affirmed summary judgment in favor of the foreclosing bank despite that the borrower submitted copies of unendorsed notes

issue other than to provide the definition.  Rather than support for Shakoori's argument that the allonge must be affixed to the note at the time of signing, these cases bolster the conclusion that Plaintiff is entitled to equitable assignment of the mortgage because the evidence demonstrates a valid endorsement by allonge and present possession of the note.

Shakoori also points to several decisions outside of Rhode Island to argue that the allonge must be affixed to the note at the time of signature.  Shakoori's Mem. 5-10.  First, in In re Shapoval, 441 B.R. 392 (Bankr. D. Mass. 2010), the Massachusetts bankruptcy court determined that an evidentiary hearing was necessary to determine "whether the allonge was ever affixed to the note."  Id. at 394.  A similar question arose in In re Thomas, 447 B.R. 402, 411 (Bankr. D. Mass. 2011) ("Given that [Defendant] has produced two different copies of the note -- one with and one without the purported allonge -- the plaintiff argues that there is a question of fact as to whether the allonge is affixed to the

_____

because the bank "provided a copy of the note with an allonge that demonstrate[d] that the note was endorsed, along with an affidavit attesting that it [held] the note."  174 A.3d at 746.  Finally, in Moura, the court affirmed summary judgment in favor of the foreclosing bank because "[t]he evidence and supporting documents . . . established that [the plaintiff] signed the note, that the note was signed in favor of Accredited Home Lenders, which endorsed an allonge in blank, and that it was subsequently held by Vericrest Financial on behalf of Deutsche Bank."  90 A.3d at 746.

note . . .") and in Adams v. Madison Realty & Development, Inc., 853 F.2d 163, 166 (3d Cir. 1988) ("We may assume . . . that the loose indorsement sheets accompanying [the] notes would have been valid allonges had they been stapled or glued to the note themselves."). Notably, however, these cases focus only on whether and how firmly the allonge is affixed to the note and make no mention of the timing of a signature on the allonge as a requirement for enforcement. Here, there is no dispute that the allonge is permanently affixed to the note and that Plaintiff is in possession of the note and allonge.

Finally, Shakoori argues that the Court erred in relying on Livonia Property Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC, 717 F. Supp. 2d 724 (E.D. Mich. 2010), and Kohler v. U.S. Bank Nat'l Ass'n, No. 11-C-0893, 2013 WL 3179557 (E.D. Wis. June 21, 2013), due to the factual differences between those cases and the present case. Both cases stand for the proposition that so long as the information on an allonge indicates an intent to serve as indorsement of the note, the allonge is effective. Here, review of the allonge affixed to the note evidences a clear and unambiguous intent to negotiate the agreement by an endorsement in blank. Thus, Shakoori's argument fails.

### 2. Handville's Testimony

Shakoori next challenges the admission of the testimony of

6

Howard Handville, a senior loan analyst at Ocwen, arguing that Handville did not verify the boarding or verification of business records as required by U.S. Bank Trust v. Jones, 925 F.3d 534 (1st Cir. 2019).  Shakoori's Mem. 11-21.

Federal Rule of Evidence 803(6) excludes from the definition of hearsay records that are kept in the course of regularly conducted business.   Jones dictates that business records "containing third-party entries without third-party testimony" may be admitted if "the entries 'were intimately integrated' into the business records."  Jones, 925 F.3d at 537 (quoting FTC v. Direct Mktg. Concepts, Inc., 624 F.3d 1, 16 n.15 (1st Cir. 2010)).   In reaching this conclusion, the Jones court emphasized certain facts elicited through the testimony of the loan servicer's witness: the servicer "incorporated the previous servicer's records into its own database," and the servicer's "acquisition department took steps to review the [prior] servicer's records in a way that assured itself of the accuracy of the records."  Id. at 538 (quoting U.S. Bank Trust v. Jones, 330 F. Supp. 3d 530, 543(D. Me. 2018)).

Here, Handville testified similarly to the witness in Jones, explaining the multi-step process through which the records were transferred from the original servicer to PHH Mortgage Corporation and verified.  Apr. 18 Tr. 9:12-15:4, ECF No. 76.   Handville

further explained how Ocwen received the documents particular to Shakoori's loan through the merger with PPH Mortgage Corporation ("PHH") and how the documents were imported and verified, discussing the systems and processes used to integrate and review the loan records.  Id. at 16:9-17:24.  He explained that he reviewed the business records, including "origination documents, the HUD-1, the closing settlement statements, [and] collateral file documents such as the note [and] mortgage" in preparation for trial.  Id. at 20:10-22.  The substance of Handville's testimony demonstrated the integration of business records into those maintained by the current servicer as required by Jones.

Shakoori claims specifically that Handville could not explain how Ocwen's records were confirmed and verified when it merged with PPH.  Shakoori's Mem. 10-11.  However, Handville testified that when the servicers merged, all the data was transferred from the "REAL servicing mortgage platform" to the "Black Knight LoanSphere MSP" using the same process described in relation to the other transfers.  Apr. 18 Tr. 19:2-18; 31:1-38:17.  He further explained how Ocwen maintained loan documents in an image database called CIS, and how, after the merger with PHH, the documents were imported into a new repository called iDesk, including how Ocwen and PHH verified the accuracy of these records.  Id. at 19:19-20:5.

8

Shakoori further argues that Handville's testimony violated the best evidence rule because Handville looked only at copies of the documents and did not know the location of the original documents. Shakoori's Mem. 16-17. Federal Rule of Evidence 1001(d) provides that a printout may constitute an original document for electronically stored information so long as the printout is an accurate reflection of that information. See Jones, 925 F.3d at 540. Here, Handville's testimony demonstrated that the loan and trust documents were printed from electronic records maintained by PHH, explained the systems in place to search for documents, and detailed the process to review documents on PHH's internal Sharepoint website, which satisfies the requirements of Rule 1001(d).

Shakoori also argues that Handville could not authenticate the note. However, Handville reviewed both the original collateral file containing the note and allonge and bailee letters that PHH and its counsel used to acknowledge transfer of the note from one entity or person to another, which suffices to authenticate the note. Apr. 18 Tr. 86:19-95:14. Further, even if Handville's testimony on this issue was deficient, Shakoori himself authenticated the note through his own testimony. Apr. 5 Tr. 38:5-39:9, ECF No. 75.

9

### 3. Plaintiff's Admissions

Shakoori argues that the Court committed manifest error of law by not accepting as admitted the facts in his request for admissions. Shakoori's Mem. 21-28. This argument fails because the Court in fact granted Shakoori's motion and admitted all facts contained in the request for admissions. See Findings of Fact & Concl. of L. 17. As explained in the Findings of Fact and Conclusions of Law, the admitted facts had little, if any, effect on the case because most pertained to assignments of the mortgage, which are not relevant to a claim of equitable assignment. Id. at 17-18. Those admitted facts that pertained to the note were also inconsequential because Plaintiff was required to prove only that it holds the note and was entitled to enforce it, which it did by presenting the original note indorsed in blank and authenticated by the testimony of both Shakoori and Handville. Id.

### 4. Sanctions

Finally, Shakoori argues that the Court committed manifest error by not imposing sanctions on Plaintiff for failing to respond to discovery requests and presenting evidence contrary to its responses. Shakoori's Mot. 28. The evidence that, Shakoori contends, forms the basis for sanctions was ultimately not admitted or deemed irrelevant, which undermines Shakoori's request for sanctions. See Findings of Fact & Concl. of L. 19. Shakoori has

10

not identified any other conduct that would justify the imposition of sanctions on Plaintiff.

Accordingly, Shakoori's Motion for New Trial is DENIED.

B. Shakoori's Motion to Alter Judgment

As discussed above, Shakoori's arguments simply rehash positions that he pressed in pretrial filings, throughout the trial, and in post-trial briefs. Thus, no relief under Rule 59(e) is available because the arguments were already presented to and properly rejected by the Court. See Yeomalakis, 562 F.3d at 61. Accordingly, Shakoori's Motion to Alter Judgment is DENIED.

C. Brenda Shakoori-Naminy's Motion for New Trial

Defendant Brenda Shakoori-Naminy, wife of Shakoori, filed her own motion for new trial, ECF No. 102, asserting several reasons why a new trial is warranted in this case. The Court addresses her arguments in turn.

1. Ability to Present Defense

Brenda first makes a variety of arguments related to the circumstances at trial and her ability to present a defense, including that the COVID protocols in place at the time were prejudicial to Defendants and that her attorney failed to appear. Def.'s Mot. New Trial ("Brenda's Mot.") 1-2, ECF No. 102. She does not, however, identify any arguments that she was precluded from making that could have changed the outcome of the case that

were not already put forth by Shakoori's attorney, nor has she identified any specific prejudice that resulted from her inability to present these arguments.

### 2. Bankruptcy Filings

Next, Brenda takes issue with the admission of documents pertaining to Shakoori's bankruptcy because they were made by Attorney Dawn Thurston who was later suspended for misconduct. As discussed in the Findings of Fact and Conclusions of Law, this case ultimately rested upon Plaintiff's ability to prove that it was the holder of the note and entitled to enforce it, which it did successfully. Findings of Fact & Concl. of L. at 8. Shakoori's bankruptcy proceedings were irrelevant to this conclusion, other than to demonstrate that he would not be personally liable for the outstanding balance on the loan because his debt was discharged. See id. at 15 n.11. Because the documents that Brenda challenges did not influence the outcome of the case, this argument is without merit.

### 3. Movement of Case

Next, Brenda argues that the fact that Defendants have not made payments on the mortgage in ten years should not count against them. She asserts that the delay in payments was due to the slow movement of the case through the judicial process over which Defendants had no control. Def.'s Mem. 7-8. Defendants last made

a payment on the mortgage over ten years before the commencement of this trial. Findings of Fact & Concl. of L. at 4. This lawsuit was filed in 2017, at least four years after the last payment. Thus, Brenda's assertion that the nonpayment was due to the movement of the case through the judicial system does not apply to a significant portion of the missed payments, and this argument is not a basis on which to grant a new trial.

       4. Mortgage

Finally, Brenda makes four challenges related to the mortgage. She argues that the high-interest refinance that was issued to Shakoori in 2000 should be declared void because he should not have qualified for such a high interest rate, Brenda's Mot. at 2-3, that Plaintiff does not meet the requirements set forth in General Laws § 6A-3-302 for a holder in due course of the mortgage, Brenda's Mot. at 5-6, that a settlement reached with the Lehman Brothers estate concerning improper depositing of mortgages into real estate mortgage investment conduits has already made Plaintiff whole vis-a-vis Defendants' mortgage, id. at 6-7, and that the assignments of the mortgage were fraudulent, id. at 9. Because this is a case for equitable assignment and the outcome depended only upon Plaintiff demonstrating that it is the holder of the note and entitled to enforce it, evidence concerning the mortgage itself is irrelevant. See Findings of Fact & Concl. of

L. at 6-7 n.6.  Thus, even if Brenda's assertions concerning the mortgage are correct, these arguments do not warrant a new trial.

III. Conclusion

    For the foregoing reasons, Defendant Masoud Shakoori-Naminy's Motion to Alter Judgment and for New Trial, ECF No. 90, and Defendant Brenda Shakoori-Naminy's Motion for New Trial, ECF No. 102, are DENIED.

IT IS SO ORDERED.

_____
William E. Smith
District Judge
Date:  May 3, 2023

14